Bertram Harnett, J.
'Cozy Williams brings this article 78 proceeding to rectify two claimed errors in her Aid to Families With Dependent Children (AFDC) grant made by the Nassau County Department of Social Services.
Mrs. Williams and her five children live at 10 Stevens Street in Freeport, New York. Four other persons, including Mrs. Williams’ niece Betruly Brown, her granddaughter Kim, and one Helen Barnes and her daughter, also reside in the same home, which has a monthly rental of $275. Nine of the ten members of the household receive public assistance, either total or supplemental.
Mrs. Barnes is employed full time, and during her working hours Mrs. Williams provides day care for her daughter. For this child care service, Mrs. Williams is paid $65 per week by the county, which, after appropriate work incentive exemptions are subtracted, is applied towards her family’s needs in reduction then of her AFDC social services grant.
Two disputes arose in June, 1973. First, the county denied to Mrs. Williams the $1 per day work expense exemption described in 18 NYCRR 352.22 (h) for payments for family day care of children. Second, although the house rental exceeded by $50 the regular maximum rent schedule limit of $225 for nine persons, the county declined to allocate an excess rent allowance to Mrs. Williams. She disputes both disallowances.
The New York State Department of Social Services affirmed both determinations in a decision after fair hearing dated August 14, 1973. The family factual circumstance is essentially agreed upon; now in dispute are only the agencies ’ interpretation and application of their own governing rules. The State has appeared and answered the petition. The county has not answered, though duly served.
Since the issues raised do not include a claimed lack of substantial evidence on the hearing record to support the determinations, this court is authorized to decide the matter pursuant to CPLR 7803. (Matter of Robertson v. Lavine, 71 Misc 2d 757, 758.)
*568 18 NYCBB 352.122 (h) provides: “ Payments for family day care of child. In the case of an employed homemaker providing family day care for children, one dollar per day of her income for each child excluding her own shall not be applied against the estimate of need”.
This income exclusion is ‘ ‘ treated as expense incident - to doing business ”. (N. Y. S. Dept. of Social Servs., Administrative Letter 73 P.W.D.-125.)
The State affirmed the county’s refusal to allow the $1 per day exemption for Mrs. Williams’ care of Mrs. Barnes’ child on the ground that Mrs. Williams ‘ ‘ is not employed as a homemaker, but is residing in her own home where she is providing child care service ”. This is notwithstanding the fact that Nassau County actually pays Mrs. Williams for performing child dare services.
The term 1‘ employed homemaker ’ ’ is not defined in the regulations or the Social Services Law. Nothing states what it is or where it must be performed. The regulation itself, in allowing the homemaker a deduction “ for each child excluding her own,” implies that the child care may take place alongside the homemaker’s care of her own children, presumably in her home. Indeed, once one accepts the proposition that a person can be paid for child care services rendered another family under her own roof, it is difficult to understand why she is not in that respect “ homemaking” — at least if “ child care service ” is deemed “ homemaking ”.
But, is “ child care” part of ‘ ‘ homemaking ” 1 Again, the regulations are not helpful. 18 NYCBB 352:9’ lists three kinds of services which relate to “homemaking”: child care in a family home; homemaker service essential to meet social needs; and housekeeping services for recipients unable to perform them. It seems obvious enough that child care and housekeeping services are major components of “ homemaking ”. The term “ homemaker service essential to meet social need”, as described in 18 NYCBB 352.9 (ib), however, is obscure to this court.
Both the caption of 18 NYCBB 3S2-.22 (h), “ Payments for family day care of child”, and the popular meaning of the term “ homemaker ”, suggest that child care is an integral part of homemaking, and, therefore, that the $1 daily exemp-. tion is available here.
Is there any conceivable rationale for denying to an employed child care provider, a deduction for work expenses, either because the service is performed in the provider’s home, or *569 because no other ‘ ‘ homemaking ’ ’ service outside of child care is also provided! The court has searched, but can find none. The expenses intended to be covered are presumably the ordinary costs of oaring for children, the clothing and furniture wear and tear, and such incidentals. These costs are no less, and may be more, in the child care provider’s own home which is itself then exposed to the rough and tumble of children activity. There is not the slightest indication anywhere, and the State does not even argue, that the deduction is for commutation transportation expenses away from the provider’s home. (Cf. Social Services Law, § 131-a, subd. 6, par. [d].) Accordingly, the State’s interpretation of its own regulation here, as excluding ‘ ‘ child care ’ ’ from the term ‘ ‘ homemaking,” is not warranted by the plain meaning of the words used, and has no apparent basis in reason or logic. (Cf. Matter of Howard v. Wyman, 28 N Y 2d 434, 438.)
Indeed, the State itself agrees with the court’s interpretation in 73 P.W.D. — 125, where an illustrative budget sheet dated July 15, 1973 is filled out for a hypothetical AFDC' family named “Smith”:
“Mrs. Smith cares for 2 children, 5 days per week, in her home. Weekly rate per child is $15.00. $ 129 gross monthly income 43 $1 per child per day deductible $ 86 adjusted gross income ”.
Only child care employment in the provider’s home is cited, and yet the $1 exemption is afforded.
The second issue, denial of an excess rental grant to Mrs. Williams and her five children, also involves Mrs. Williams’ child care salary. For the sake of this argument, the State admits the merits of the excess rental need, which arose out of a threatened eviction in June, 1973. This need was the basis for county approval of an excess shelter allowance contained in a separate monthly assistance grant to the granddaughter Kim. Still, the State upheld the rental denial here on the ground that Mrs. Williams has available child care income to meet the added shelter need.
Mrs., Williams’ income is not all “ available ” to be applied against her family’s prescribed needs. As an employed recipient of supplemental AFDC assistance, she is permitted to disregard some income received, and must count only the balance towards her family’s needs.
*570 18 NYCRR 352.20. (b) (2) provides, with respect to income earned by an AFDC recipient, that the “first $30 per month plus one-third of the remainder of total gross earned family income shall be exempt and disregarded as income or resources in determining eligibility or degree of need ”. (Emphasis supplied.) This income exclusion derives from section 349-a of the Social Services Law which was enacted in 1968 as part of an entire legislative renovation to provide ‘1 work incentives * * * to families with dependent children”. (See L. 1968, eh. 931.) The work incentive program and its “30 + % ” exclusion in turn comes from the Federal ¡Social Security Act (TI. S. Code, tit. 42, § 602, subd. [a], par. [8], cl. [A], subcl. [ii]), which mandates the “disregard” of this portion of earned income. (See Code of Fed. Reg., tit. 45, § '233.20, subd. [a], par. [11].) The obvious purpose of the exclusion is to encourage those receiving AFDC assistance to become employed, and, in so doing, to lessen the amount of governmental assistance required to provide for basic family needs. This is accomplished by permitting the employed person to disregard some of the income earned, so that she is “better off” than she would be if receiving the full assistance grant without working. It is a legislated reward for those individuals who alone assume the double burden of caring for children and a home and working to support both.
This specially excluded income is not to be applied towards needs that would otherwise be met by a public assistance grant, including a discretionary allowance for rent. The only excepr tion to this rule under State and Federal law is where the recipient has terminated her job or refused to accept another job within 30 days preceding the month being computed. (Social ■Services Law, § 349-a, subd. 2; 18 NYCRR 352.20 [b] [2] [i] and [ii]; Code of Fed. Reg., tit. 45, § 233.20, subd. [a], par. [11]; subd. [b].)
Apparently, the State in other fair hearing decisions (Matter of Bishop, dated March 12, 1973; Matter of Homers, dated March 13, 1973; Matter of Moon, dated Oct. 26, 1973) has reversed local agency allocations of work incentive exempt income to rental need where an excess allowance was available. Its failure here to follow those decisions is not explained.
The State appears to suggest that Mrs. Williams should pay the excess rental out of her “unprotected” income, that is, out of the balance left after the exempt portion is subtracted. It fails to grasp that this ‘ ‘ unprotected ’ ’ income has already been applied against the ordinary basic needs in arriving at *571 Mrs. Williams’ present budget. (18 NYCRR 352.29 [b]; see, reference to budgetary inclusion of $23.34 as “net income” on p. 2 of decision after fair hearing herein, attached as Exhibit B to respondent Lavine’s verified answer.) Such income, once applied, cannot, again, be applied against the posited excess rental need, inasmuch as it has now been (‘ used up ” in meeting part of the family’s ordinary monthly needs, without consideration of1 the prorated excess shelter need. That this income is “ unprotected ” does not mean it can be counted twice.
Accordingly, the petition is granted and judgment is rendered pursuant to article 78 of the CPLR annulling the decision after fair hearing herein dated. August 14, 1973, and declaring unlawful and void the respondents’ (1) denial of petitioner’s family day care income exemption available pursuant to 18 NYiCRR 352.22 (h), and (2) refusal to grant a prorated excess rental allowance. Respondents are directed to include these items in the budget, and to correct the past wrongful denials by grant retroactive to June, 1973.