The **NATIONAL WELFARE RIGHTS ORGANIZATION, Plaintiff,**

v.

**Caspar WEINBERGER, Defendant.**

**Civ. A. No. 1703–73.**

United States District Court, District of Columbia.

April 11, 1974.

Albert White, Washington, D. C., Steven J. Cole, Henry A. Freedman, Adele M. Blong, Nancy Duff Levy, NLSP Center on Social Welfare Policy and Law, Inc., Carolyn M. Heft, George C. Stewart, MFY Legal Services, Inc., New York City, Albert White, Howard L. Feinstein, Neighborhood Legal Services Program, Washington, D. C., for plaintiff.

Michael J. Ryan, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This action challenges the validity of 45 C.F.R. § 233.20(a)(12)(i), 38 Fed. Reg. 22010 (August 15, 1973), promulgated by the Department of Health, Education and Welfare (HEW). Plaintiff National Welfare Rights Organization (NWRO) is a voluntary national association of 125,000 individuals. Caspar Weinberger, Secretary of HEW, is sued in his official capacity. Jurisdiction is alleged under 28 U.S.C. §§ 1331, 1361 (1970) and 5 U.S.C. §§ 701–706 (1970). A motion for certification as a class action has been made. The relief sought involves a declaration that the questioned regulation is invalid, a recission of that regulation by HEW and notification to the states. Plaintiff in four separate counts contends (1) that the regulation violates statutory sections common to five separate titles of the Social Security Act of 1935 as amended; (2) contravenes Congress's express disapproval of the substance of the regulation; (3) denies equal protection as embodied in the Due Process Clause of the Fifth Amendment; and (4) is arbitrary, capricious and an abuse of discretion. NWRO has moved for partial summary judgment on its first two counts. HEW has opposed and moved for summary judgment on all counts. In reply, plaintiff argues material issues of fact are present in the latter two counts.

For the reasons which appear below, the Court is of the opinion that the plaintiff must succeed in its first count. Accordingly, a decision on the remaining counts is now moot.

### I.

Several titles of the Social Security Act are at issue due to the fact that there are virtually identical key sections common to each title which are alleged to have been violated.

| | | | |
|---|---|---|---|
| Title I | 42 U.S.C. § 301 et seq. | (1970) | Old Age Assistance (OAA) |
| Title IV | 42 U.S.C. § 601 et seq. | (1970) | Aid to Families with Dependent Children (AFDC) |
| Title X | 42 U.S.C. § 1201 et seq. | (1970) | Aid to the Blind (AB) |
| Title XIV | 42 U.S.C. § 1351 et seq. | (1970) | Aid to the Permanently and Totally Disabled (APTD) |
| *Old* Title XVI | 42 U.S.C. § 1381 et seq. | (1970) | Aid to the Aged, Blind & Disabled (AABD) |
| *New* Title XVI | 42 U.S.C. § 1381 et seq. (Supp. II 1972) | | Supplemental Security Income for the Aged, Blind and Disabled (SSI) |

Titles I through XVI (as then in effect) applied throughout the United States and its territories until January 1, 1974. Their programs of welfare assistance are of the traditional federal state variety. On January 1, 1973, new Title XVI, the SSI program, replaced *all* the titles *except* AFDC, throughout the United States but not in Guam, Puerto Rico and the Virgin Islands. The SSI program is a totally federally managed and funded welfare program for the aged, blind and disabled. The states no longer participate in this program. The old titles and their federal-state system for the aged, blind and disabled now only apply in Guam, Puerto Rico and the Virgin Islands. Title IV, AFDC, re-

mains a federal-state program and applies throughout the United States and its territories.

This case, filed in November, 1973, under the old system, has therefore had its scope somewhat mooted by the institution of the SSI program on January 1, 1974. The case now revolves around the AFDC program and the old titles which only apply in three territories.

On August 15, 1973, at 38 Fed.Reg. 22010, the Secretary published the challenged regulation, 45 C.F.R. § 233.20(a) (12)(i), in final form as an amendment to an already existing regulation at 45 C.F.R. § 233.20(a)(3)(ii)(d).

The amended regulation was issued at the request of many state welfare agencies and the National Council of State Administrators of the American Public Welfare Association, on behalf of all state welfare agencies. It was to become effective as of October 15, 1973, or earlier at state option and provides in pertinent part:

§ 233.20 Need and amount of assistance.

(a) Requirements for State plans.
\* \* \*

\* \* \* \* \* \*

(12) Recoupment of overpayments and correction of underpayments. Specify uniform Statewide policies for:

(i) Recoupment of overpayments of assistance, including overpayments resulting from assistance paid pending a hearing decision; Under this requirement:

(A) The State may recoup any overpayment \* \* \*

(B) Except where there is evidence which clearly establishes that a recipient willfully withheld information about his income and resources, recoupment shall be limited to overpayments made during the 12 months preceding the month in which the overpayment was discovered;

(C) The plan may provide for recoupment from available income and resources (including disregarded, set-aside or reserved items) or from current assistance payments or from both;

(D) If the payments are made from current assistance payments, the State shall establish reasonable limits on the proportion of such payments as may be deducted, so as not to cause undue hardship on recipients;

(E) The plan may provide for recoupment in all situations and in specified circumstances and for the waiver of the overpayment where the cost of collection would exceed the amount of the overpayment.

\* \* \* \* \* \* 1

The import of this regulation is to permit a state welfare agency to recoup or recover an overpayment which has previously been made to a recipient despite the fact that the recipient, who by definition lives in straightened circumstances, may lack the means from which the overpayment is to be recouped. His current assistance payment by virtue of the challenged regulation can be reduced despite the fact that there may have been no fault, error or fraud on his part and the overpayment was due to the mistake of the administering agency. Nevertheless, this regulation was promulgated shortly after

---

1. The prior regulation stated that,

[C]urrent payments of assistance will not be reduced because of prior overpayments unless the recipient has income or resources currently available in the amount by which the agency proposes to reduce payment; except that where there is evidence which clearly establishes that a recipient willfully withheld information about his income or resources, such income or resources may be considered in the determination of need to reduce the amount of the assistance payment in current or future periods; \* \* \*

45 C.F.R. § 233.20(a)(3)(ii)(d), 34 Fed. Reg. 1395 (January 29, 1969).

Note that this regulation does not permit recoupment of overpayments unless the recipient has income or resources currently available from which the overpayment can be taken. But where willfulness can be shown on the part of the recipient, the overpayment can be regained by reducing a current welfare payment due the recipient.

HEW had completed studies showing that half of all overpayments result from agency, not recipient, error [2] and that few cases of overpayment merit criminal fraud prosecution.[3]

As a result of the regulation some states now have amended their programs to provide for recoupment of overpayments in cases where the proceeds of the overpayment are no longer available. Some states have provided for recoupment only in cases in which it is alleged the recipient willfully withheld information affecting the grant; others provide for recoupment in cases of agency error as well.[4]

Finally, what this case does not involve must also be mentioned. Plaintiff had admitted it does not challenge the power of the authorities to punish wrongdoers [5] or to recover incorrectly paid assistance from those with the ability to pay. What is at issue here is the power of the states to reduce current assistance payments to welfare recipients concededly eligible for such payments under state and federal law, for the purpose of recouping overpayments made to such recipients by state or local welfare departments, without regard to the effect of such reduction on their ability to purchase items of daily need.

2. A recent HEW analysis of the national quality control subsample shows that 45.7% of all errors are made by the welfare agencies, and that "virtually all" of the errors attributable to both the welfare agency and the recipient (10.8% of the total) could have been prevented by agency action alone. Quality Control Charts, Analysis of Eligibility and Incorrect Payments in AFDC, SRS–73–21210 (January 19, 1973), Chart 9. Two earlier reports contained similar data. Quality Control National Subsample, March, 1972, attached to HEW–SRS Press Release, December 4, 1972; Quality Control National Subsample, April, 1971, attached to HEW–SRS Press Release, dated January 3, 1972. In the December 4, 1972 Press Release defendant's predecessor, Secretary Richardson, identified as factors causing a high rate of error "rapidly rising caseloads, uncertainty over welfare reform legislation, high staff turnover, and inadequate resources." (p. 4) Even more recent figures from New York show that 56.9% of all AFDC overpayments and 66.5% of overpayments to all other persons receiving federally assisted aid were the result of agency error. Eligibility Audit Report, July 1–December 31, 1972, New York State Department of Social Services, pp. 19, 30.

3. HEW statistics show that in less than one half of one percent of all open cases, that is, 35,739 out of 7,692,000 cases, is there evidence of fraud, and that only slightly half of these are referred for prosecution. Disposition of Public Assistance Cases Involving Questions of Fraud, HEW, SRS, NCSS Report E–7 (FY–72), June 19, 1973, Table C. HEW has not denied the contents of the studies in this and the preceding note.

4. Affidavit of Henry A. Freedman in Opposition to Defendant's Cross-Motion For Summary Judgment; Affidavits of Jule M. Sugarman, Catherine Jermany, and Inez Delgado in support of Plaintiff's Motion for Partial Summary Judgment. Local Rule 1–9(g) also permits the Court to accept Plaintiff's Statement of Material Facts, paragraph 6, since HEW has not submitted a statement of genuine issues.

It is interesting to note that under Title II of the Social Security Act, Social Security Old Age, Survivors and Disability Insurance, overpayments are not collectable by HEW where the recipient was "without fault" and where it would "defeat the purposes" of the program or would "be against equity and good conscience." 42 U.S.C. § 404(b) (1970). The newly instituted SSI program makes similar provisions. 42 U.S.C. § 1383(b) (Supp. II 1972).

5. Criminal prosecution of welfare fraud, fraud, or larceny is generally available to state and local prosecutors. In addition, Congress has recently provided that fraudulently obtaining Medicaid benefits (in the federal-state grant-in-aid program under Title XIX of the Social Security Act) is a misdemeanor subject to a fine of $10,000 or imprisonment up to a year, or both. Social Security Act, Sec. 1909(a), added by Pub.L. 92–603, § 242(c), 86 Stat. 1419–1420 (October 30, 1972). Finally, federal prosecutors are now seeking conviction under mail fraud statutes of persons accused of obtaining AFDC benefits fraudulently. United States v. McDaniels, 355 F.Supp. 1082 (E.D.La. 1973).

Many courts also impose restitution of benefits wrongfully received as a condition for probation in welfare fraud cases—a long-standing practice.

## II.

The defendant has raised several procedural objections to plaintiff's claim for relief. There is no merit to HEW's claim that there is no case or controversy present. Plaintiff has met all the tests. E. g., Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); see note 4 *supra* and accompanying text. Nor are the states indispensible parties. See Adams v. Richardson, 351 F.Supp. 636 (D.D.C. 1972), 356 F.Supp. 92 (D.D.C.1973), modified and aff'd en banc, 156 U.S. App.D.C. 267, 480 F.2d 1159 (1973). Only the defendant's denial that jurisdiction lies under 28 U.S.C. §§ 1331 and 1361 (1970) requires more extended discussion.

Citing the recent case of Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), HEW contends that NWRO cannot meet the $10,000 amount in controversy requirement without aggregating the claims of individual members of plaintiff's class. Plaintiff has denied any attempt at impermissible aggregation and has satisfied the Court that the amount in controversy requirement is fully met.

Our Court of Appeals has stated that "particularly where purely injunctive relief is sought, the amount in controversy may be measured by either 'the value of the right sought to be gained by the plaintiff . . . [or] the cost [of enforcing that right] to the defendant.'" Tatum v. Laird, 144 U.S.App.D.C. 72, 444 F.2d 947 (1971), reversed on other grounds, 408 U.S. 1, 92 S.Ct. 231, 33 L. Ed.2d 154 (1972). This Court is satisfied that the value of the right sought to be enforced will exceed $10,000, and that accordingly jurisdiction lies under § 1331. See and compare Williams v. Phillips, 360 F.Supp. 1363 (D.D.C.), motion for stay denied, 157 U.S.App.D.C. 80, 482 F.2d 669 (1973), with Miller v. Standard Federal Savings and Loan Ass'n, 347 F.Supp. 185 (E.D.Mich.1972).

The Court in this case is, in essence, faced with the Government's administration of a multi-billion dollar trust fund settled by Congress for the benefit of a vast number of individuals. NWRO is seeking to halt an alleged illegal course of conduct under the Act and to prevent the misallocation of federal matching funds which are well in excess of $10,000.00. When the facts are viewed in this manner, District Judge Tenney's decision in Bass v. Rockefeller, 331 F. Supp. 945 (S.D.N.Y.), vacated as moot 464 F.2d 1300 (2d Cir. 1971), is clearly relevant. There Judge Tenney reviewed two tests to be used to determine whether a class has a "common and undivided" interest in the traditional sense which permits aggregation. See Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In the "interest distribution test" "a common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among the class members." 331 F.Supp. at 950. The "essential party test" permits aggregation "when none of the class members could bring suit without directly affecting the rights of his co-parties." *Id.:* A common and undivided interest then can be found under either test. Both tests are met here. Judge Tenney's analysis has recently been adopted by Judge Gasch of this Court. NWRO v. HEW, C.A. No. 264–73 (D.D.C., filed October 16, 1973) at 5–7. This Court also adopts Judge Tenney's reasoning; see also Berman v. Narragansett Racing Ass'n, 414 F.2d 311 (1st Cir. 1969); New Jersey Welfare Rights Organization v. Cahill, 483 F.2d 723, 725 n. 1 (3d Cir. 1973); Bass v. Richardson, 338 F. Supp. 478, 482 (S.D.N.Y.1971), and holds that jurisdiction is present here under § 1331. N.W.R.O. v. HEW, C.A. No. 264–73 (D.D.C. filed October 16, 1973).

Alternatively, jurisdiction is also found under 28 U.S.C. § 1361 (1970). No jurisdictional amount requirement is necessary under § 1361 but HEW contends, in a very brief argument, that § 1361 is not an independent jurisdictional grant to the federal courts

as is, for example, 28 U.S.C. §§ 1331, 1332, 1333 and 1337. Four cases are cited but they do not support the defendant's contention.[6] Plaintiff's reply conclusively establishes that § 1361 is an independent jurisdictional grant. Peoples v. U.S.D.A., 138 U.S.App.D.C. 291, 427 F.2d 561 (1970) so holds. Accordingly, since 42 U.S.C. § 1302 (1970) requires the Secretary to promulgate regulations which are "not inconsistent" with the Social Security Act, and since the Court finds in Part III *infra* that the regulation at issue violates the Act, the Secretary has violated a non-discretionary duty. The other equitable conditions for the exercise of mandamus being present, the Court holds that jurisdiction is present under 28 U.S.C. § 1361 (1970). See Peoples v. U.S.D.A. *supra;* Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), cert. denied 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970).

■ A final procedural matter concerns the class action aspect of this suit. The Court has no doubt that NWRO will "serve the common good of all welfare recipients involved," N. W. R. O. v. Finch, 139 U.S.App.D.C. 46, 429 F.2d 725, 739 (1970) and "will fairly and adequately represent the interests of its members and all welfare recipients." N. W. R. O. v. HEW, C.A. No. 264–73 (D. D.C. filed October 16, 1973) at 9. In the interest of time, simplicity and judicial economy it is unnecessary then for the Court to designate this suit a class action. Thus, the class action aspect of this suit is dismissed without prejudice.

## III.

The Court now turns to the merits of NWRO's first count which alleges that the challenged regulation violates provisions of the Social Security Act. Central to its argument is what is called the "income and resources" clause of the Social Security Act. This clause in virtually identical language is found at 42 U. S.C. §§ 302(a)(10)(A), 602(a)(7), 1202 (a)(8), 1352(a)(8), and 1382(a)(14) (1970). It is there mandated that the states in their assistance programs "shall, in determining need for such assistance, take into consideration any other income and resources" of the individual seeking assistance. 42 U.S.C. § 302(a)(10)(A) (1970). The clause means that in determining the level of payments to make to an otherwise eligible recipient, the state must look to any other income, e. g., regular financial contributions from a third party, or resources, e. g., property owned by the individual, and take these factors into consideration before the amount of the assistance payment is determined.

The essence of HEW's long standing policy in this regard is found in its regulation interpreting this clause. 45 C. F.R. § 233.20(a)(3)(ii)(c) provides that:

> Only such net income as is *actually* available for current use on a regular basis will be considered and only *currently* available resources will be considered. (emphasis supplied)

Plaintiff's argument is based upon its reading of the income and resources

**6.** United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 57 S.Ct. 855, 81 L. Ed. 1272 (1937), does not stand for the proposition that § 1361 is not an independent jurisdictional grant. That question was not at issue in the case. The case does talk of the clear duty that must lie for mandamus and the conditions for its exercise. Nor are its facts in point for the person sued there had no power to perform the act sought. Lovallo v. Froehlke, 468 F.2d 340 (2d Cir. 1972), is not on point or relevant with respect to jurisdiction. It merely cites several conditions for mandamus and does not discuss jurisdiction. Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), cert. denied, 397 U.S. 941 (1970), is directly opposite defendant's position and supports the plaintiff. The case holds § 1361 is an independent jurisdictional grant but to exercise its power three conditions must be met. Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958) has no relevance. It deals with discretion to set tolls for the Panama Canal.

clause and NWRO's contention that the clause prohibits recoupment of the type permitted by HEW's new regulation. In short, plaintiff claims that recoupment is not permitted unless the recipient has income or resources which presently-exist and are available "in fact" in the amount of the proposed reduction. The core of defendant's argument is a very narrow reading which confines itself strictly to the facts of King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)—that the income and resources clause only prohibits a presumption that a man in the house will make income available to a child who is now his own and therefore that such presumed income cannot be taken into account in determining the level of payments to be made to the welfare recipient.

The meaning of the income and resources clause has been the subject of interpretation by the Supreme Court in Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970) and King v. Smith, at 319 n. 16. Consequently, the clause permits a state agency in determining the amount of assistance to consider only income and resources which are "in fact" available to a recipient for current use on a regular basis. Lewis v. Martin, *supra*, at 555. This interpretation clearly comports with the Act. Id. The statute excludes from consideration resources or income which are presumed or assumed to be available without any factual basis actually supporting their existence. See King v. Smith, *supra*, at 319 n. 16. Other courts which have considered the meaning of the income and resources clause also have come to the above conclusion. Reyna v. Vowell, 470 F.2d 494 (5th Cir. 1972) (income of resident minor child); Solman v. Shapiro, 300 F.Supp. 409 (D.Conn., three judge court) (income of stepparent without obligation to support), aff'd 396 U.S. 5,

90 S.Ct. 25, 24 L.Ed.2d 5 (1969); see Gilliard v. Craig, 331 F.Supp. 587 (W.D. N.C.1971) (three judge court), aff'd 409 U.S. 807, 93 S.Ct. 39, 34 L.Ed.2d 66 (1972) (payment to own child attributed to other children in family). See also Cooper v. Laupheimer, 316 F.Supp. 264 (E.D.Pa.1970) (attempted recoupment of duplicate payment after stolen check is found).

In permitting the recoupment of "any overpayment" even though it may come only from a reduction in "current assistance payments," the regulation before us clearly authorizes a change in the recipient's monthly payment, even though his financial circumstances, apart from the overpayment, have not changed. In so doing, the regulation requires the states to presume conclusively that the overpayment is currently available even though it may have long ago been spent. The recoupment regulation therefore violates in fact availability of income and resources because it presumes income is available when this may not in fact be so. The Court finds no distinction between the presumptions struck down in King v. Smith, *supra*, and Lewis v. Martin, *supra*, and the presumption of availability embodied in HEW's recoupment regulation. *King* invalidated a presumption that a man in the house will make income available to a child who is not his own. *Martin* likewise upset a presumption that the income of a non-adoptive stepfather is available to children to whom he owes no legal duty of support. The recoupment regulation here at issue similarly presumes income or resources are available when they may not in fact be available.[7] We therefore hold that the regulation at issue is inconsistent with the Social Security Act of 1935 as amended. Hagans v. Wyman, No. 72-C-182 (E.D.N.Y., October 19, 1972), rev'd for lack of jurisdiction, 471 F.2d 347 (2d Cir. 1973),

---

7. HEW recently in an amicus brief contended that a New York recoupment regulation " 'contravenes federal requirements because it assumes for particular months the existence of income and resources which by definition

are not currently available for such months.' " Hagans v. Levine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). HEW's present posture represents a change of position.

rev'd sub nom. Hagans v. Levine, 415 U. S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); see Cooper v. Laupheimer, 316 F.Supp. 264 (E.D.Pa.1970).

Accordingly, 45 C.F.R. § 233.20(a) (12)(i) is declared invalid for the reasons set forth. The Secretary is ordered to rescind that regulation and is enjoined from promulgating any similar regulation which violates the principle of in-fact availability of income and resources. The states are to be notified. Summary judgment is also granted plaintiff on its first count. An order consistent with the foregoing has been entered this day.

## ORDER

Upon consideration of plaintiff's motion for certification of this action as a class action and for partial summary judgment, defendant's motion for summary judgment and the opposition thereto, and in the light of the Court's Memorandum Opinion filed this day, it is by the Court this 11th day of April, 1974.

Ordered, adjudged and decreed, that 45 C.F.R. § 233.20(a)(12)(i), 38 Fed. Reg. 22010, be and hereby is declared invalid in the respects hereinafter set forth as it affects all recipients of federally funded assistance under Title IV of the Social Security Act, who live in the fifty states and the District of Columbia, Guam, Puerto Rico, the Virgin Islands, and all recipients of such benefits under Titles I, X, XIV, and XVI in Guam, Puerto Rico, and the Virgin Islands, and that the recoupment from current public assistance grants of prior overpayments when the recipient lacks income or resources available in the amount of the proposed reduction is declared to be prohibited by Sections 2(a)(10)(A), 402(a)(7), 1002(a)(8), 1402(a)(8) and 1602(a)(14) of the Social Security Act. Nothing in this Order shall be construed to prohibit by regulation the recoupment from current assistance grants of prior overpayments where said overpayments were occasioned or caused by a recipient's willful withholding of information concerning his income and resources; and it is further

Ordered, adjudged and decreed, that the defendant Weinberger rescind the aforesaid regulation in the respects indicated and notify each state welfare agency within ninety (90) days of the date of this Order that the recoupment of prior overpayments from current assistance grants when the recipient lacks income or resources available in the amount of the proposed reduction is a violation of federal law and will subject the state agency to the compliance procedures set forth in the Social Security Act and defendant's regulations thereunder; and it is further

Ordered, adjudged and decreed, that defendant serve upon counsel for plaintiff a copy of the aforesaid notice 20 days prior to its issuance to the states; and it is further

Ordered, adjudged and decreed, that defendants serve upon counsel for plaintiff within 120 days from the date of this Order, a report on the status of the provision of each state plan in effect with respect to recoupment of benefits to recover prior overpayments; and it is further

Ordered, adjudged and decreed, that defendant, his successors, agents, and employees, be and hereby are enjoined from promulgating or issuing any rule, regulation, guideline, or other material purporting to authorize recoupment of current public assistance benefits to recover prior overpayments unless the recipient has income or resources in fact available; and it is further

Ordered, adjudged and decreed, that defendant's motion for summary judgment be and hereby is denied; and it is further

Ordered, adjudged and decreed, that Count One of plaintiff's motion for partial summary judgment be and hereby is granted, the remaining counts are now moot; and it is further

Ordered, adjudged and decreed, that plaintiff's motion for certification as a class action be and hereby is denied.