Josephine McGRAW, Individually and on behalf of her minor dependent children and all persons similarly situated, Plaintiff,

v.

Stephen BERGER, Individually and as Commissioner of the New York State Department of Social Services, et al., Defendants.

No. 75 Civ. 4682 (WCC).

United States District Court, S. D. New York.

Feb. 25, 1976.

Brooklyn Legal Services Corp., Brooklyn, N. Y., for plaintiff; John C. Gray, Jr., Lloyd E. Constantine, Brooklyn, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for defendants; Rosalind Fink, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM AND ORDER

CONNER, District Judge:

Plaintiff Josephine McGraw and her nine dependent children are recipients of public assistance benefits under the Aid to Families with Dependent Children (AFDC) program, 42 U.S.C. § 601 *et seq.* The individual defendants are public officials legally responsible for administration of the AFDC program in New York. AFDC is among the categorical assistance programs established under the Social Security Act and is financed by the Federal Government and participating States on a matching-fund basis.

The present action represents a challenge to the validity and continued enforcement of 18 New York Code of Rules and Regulations § 352.31(d)(1)(ii) [1] (the New York regulation). That challenge extends to so much of the New York regulation as authorizes the defendant New York State Department of Social Services (the State agency) to recoup a past AFDC grant overpayment—where such overpayment is not occasioned by the recipient's wilful act or omission—from what is commonly denominated as an earned income "disregard."

I.

■ Alleging that the New York regulation stands in contravention of the Social Security Act and operates in derogation of due process and equal protection under the Fourteenth Amendment, plaintiff brought this suit for a declaratory judgment and preliminary and permanent injunctions pursuant to 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65, F.R. Civ.P. and 42 U.S.C. § 1983. Because plaintiff's constitutional claims, whatever their ultimate merits, are at the least arguable, this Court concludes that it has subject matter jurisdiction under 28 U.S.C. § 1343(3) and therefore may consider the pendent statutory claim, *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), without need to convene a three-judge court unless the statutory claim proves not to be dispositive. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

At a pretrial conference addressed to plaintiff's motions for a temporary restraining order,[2] preliminary injunction, and class action certification, this Court determined that, in the absence of issues of material fact demanding an evidentiary hearing or trial, the parties' paper submissions would be treated as applications for summary judgment under Rule 56, F.R.Civ.P., allowing for plenary relief on the merits. The parties therefore were directed to file a statement of agreed facts pursuant to Rule 9(g) of the General Rules of this Court.

---

1. The New York regulation reads as follows:

   "Recoupment of any overpayment made to a recipient shall not be required unless the recipient has currently available income or resources, exclusive of the current assistance payment. Exempted income and disregards shall be considered as being currently available."

2. At that conference, the Court ordered defendants temporarily restrained from recouping overpayments to the McGraw family from their earned income disregard.

As the parties were advised at their conference with this Court, the class action designation sought by plaintiff would constitute, at best, procedural surplusage. This is not to say that the Court entertains any doubt that plaintiff might adequately represent the interests of those welfare recipients who, like herself, are immediately and intimately affected by the recoupment of agency overpayments from earned income disregards. Nor does the documentation supplied by the parties leave any basis for questioning the numerosity of a class that would consist of plaintiff and others similarly situated with respect to the issues presently before the Court.

■ Nonetheless, within the frame of the present case, certification of class action status would add no force to the prospective effects of a declaratory judgment and could not serve to implement any meaningful retroactive relief in which members of such a class might share: under the ruling of *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), this Court is without power to award welfare benefits retroactively. The Court thus declines to certify this action under Rule 23(c) F.R.Civ.P.

## II.

For the sake of clarity, the issues involved in this action are, in the discussion that follows, raised in relief from the background of plaintiff's personal welfare case history. Mrs. McGraw and her family have received semi-monthly AFDC payments for an unspecified number of years. Unemployed when she first became an AFDC recipient, Mrs. McGraw secured a job as a cook's helper more than three years ago, an employment that she has retained to date. Throughout that same period, the McGraw family has continued to receive AFDC assistance as a supplement to Mrs. McGraw's earned income.

In the fixing of AFDC benefits to be paid to the McGraws, the key point of reference is the "standard of need," an amount calculated by the State to be necessary to sustain a family of the McGraws' size; federal law itself neither prescribes the components nor targets the level of such standards. As the Supreme Court has recently observed,

"Under [the] HEW regulations [that implement Title IV,] * * * [b]oth eligibility for AFDC assistance and the amount of benefits to be granted an individual applicant are based on a comparison of the State's standard of need with the income and resources available to that applicant. 45 C.F.R. § 233.20(a)(2)(i). The 'income and resources' attributable to an applicant * * * consist generally of 'only such net income as is actually available for current use on a regular basis * * * and only currently available resources.' 45 C.F.R. § 233.-20(a)(3)(ii)(c). * * *. If, [after consideration of certain deductions and exemptions], the net amount of 'earned income' is less than the predetermined statewide standard of need, the applicant is eligible for participation in the program and the amount of the assistance payments will be based upon that difference. 45 C.F.R. § 233.20(a)(3)(ii)(a) and (c)." *Shea v. Vialpando*, 416 U.S. 251, 253–54, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120, 125 (1974).

The difference between the applicable standard of need and the AFDC recipient's "income and resources" is commonly referred to as the "budget deficit." When Mrs. McGraw became a wage earner, her family's own budget deficit was thereby affected in two ultimately measurable respects, in accordance with the commands of Section 402(a)(7) and (8) of the Social Security Act, 42 U.S.C. § 602(a)(7) and (8). The relevant portions of those clauses read as follows:

"§ 602.

(a) A State plan for aid and services to needy families with children must * * * (7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid * * *;

(8) provide that, in making the determination under clause (7), the State agency—

(A) shall with respect to any month disregard—

\* \* \* \* \* \*

(ii) in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual \* \* \* whose needs are taken into account in making such determination, the first $30 of the total of such earned income for such month ·plus one-third of the remainder of such income for such month \* \* \*."

Thus, by operation of Section 402(a)(7), the McGraws' budget deficits—and the AFDC grants based upon them—have been necessarily reduced by the fact of an income regularly generated by Mrs. McGraw's employment. However, by force of Section 402(a)(8), the consequent reductions are, again necessarily, limited by the "$30 and ⅓" disregards.

At the end of April 1975, a notice from the New York City Department of Social Services (the City agency) advised the McGraw family that,

"Your [semi-monthly] income from the period July, 1974 to present should have been $127.59, not $80.43 as previously budgeted. This resulted in $990.36 in overpayment for this period.

[The New York regulation] permit[s] recoupment on amounts up to the total exempted income. Since your budget deficit is less than your exempted income your case will be suspended for 13 issue[s] until this amount is recouped."

At Mrs. McGraw's request, the State agency held a "fair hearing" for review of the City agency's intended recoupment measures. In a decision rendered on August 6, 1975, defendant Berger announced the following determinations:

1) The McGraws had received, through agency error, an AFDC overpayment.

2) That overpayment could be recouped in accordance with federal law

only if the McGraws had available income and/or resources in excess of their AFDC grant.

3) Plaintiff's "$30 and ⅓" disregard represented such excess income and thus was subject to recoupment under the New York regulation.

As a result of that decision, the City agency proceeded to reduce the McGraws' semi-monthly AFDC payments by "withholding" a portion of the earned income disregards; the agency's departure from its initial intention to suspend its payments to the McGraws remains, to date, unexplained.

Plaintiff now asks this Court to rule that, at least where overpayments have not been occasioned by the fraud of AFDC recipients, the earned income disregard established under Section 402(a)(8) stands beyond the reach of defendants' recoupment. Defendants for their part insist that a fair reading on the Social Security Act and a due deference to the policies of the Department of Health, Education and Welfare (HEW) compel the conclusion that the recoupment of disregards wholly comports with federal law.

### III.

Viewed in the abstract, defendants' posture in this litigation commands a reasonable sympathy. By invoking the New York regulation at issue, defendants have sought no more than to retrieve for the unhappily finite public treasury monies received without entitlement. In drawing upon the earned income disregard for that purpose, defendants have looked to a source that, by definition, lies beyond the minimum standard established as necessary for the AFDC recipient's subsistence: in New York, AFDC grants are as a rule calculated to compensate for the recipient's entire budget deficit. Thus, even if reduced by an amount representing the full measure of the earned income disregard, such a grant would still raise the recipient to the level of his determined standard of need. Moreover, in effecting recoupments, defendants act under

the State's regulatory admonition that "[t]he proportion of the current assistance grant that may be deducted for recoupment purposes shall be limited on a case-by-case basis so as not to cause undue hardship * * *." 18 N.Y.C.R.R. § 352.31(d)(4).

■ Nevertheless, the present litigation cannot be put to rest by the mere recitation of defendants' salutary objectives. For, although "there is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits," *King v. Smith*, 392 U.S. 309, 318–19, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118, 1126 (1968), it is just as certain that a participating State, under Title IV, must abide by federal directive where Congress has chosen to speak in mandatory terms. Thus, the New York regulation may be permitted to stand only if it is consistent with the congressional mandate embodied in Section 402(a)(8), *i. e.,* that the first thirty dollars of an individual's earned income plus one-third of the remainder be disregarded in New York's "determination" of that individual's "need." See *X v. McCorkle*, 333 F.Supp. 1109 (D.N.J.1970), *affirmed sub nom. Engelman v. Amos*, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971).

Analyzed in the abstract, defendants' argument that recoupment of overpayments from earned income disregards does not offend the literal import of Section 402(a)(8) exerts a considerable force. Thus, defendants assert, the statutory disregard extends—in terms—no farther than the bounds of a State's "determination of need," a determination that, according to defendants, involves no more than an identification of those who are eligible for AFDC benefits and a calculation of the AFDC family's budget deficit. Once having made such a determination in accordance with, *inter alia,* the earned income disregard prescribed by Section 402(a)(8), the State is thereafter free, defendants emphasize, to establish its own level of benefits and, consequently, to reduce below the budget-deficit figure the amount of assistance that an AFDC family will receive. *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 435 (1972); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); see *Rosado v. Wyman*, 397 U.S. 397, 413, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442, 456 (1970). Thus, defendants reason, in its recoupment of overpayments, the welfare agency does not "determine need" when it proceeds indirectly against the already-honored disregard by adjustment of the ultimate AFDC payment.

■ Defendants concede that an overpayment caused other than by an AFDC recipient's fraud cannot be recouped where to do so would reduce an AFDC family's means below the level of that family's standard of need. See *National Welfare Rights Organization v. Weinberger*, 377 F.Supp. 861 (D.D.C.1974). Defendants urge, however, that the earned income disregard represents an available asset that—at least in New York—is in excess of the standard of need and thus is a proper source for recoupment.

Defendants' construction of Section 402(a)(8) is reinforced by the apparent support of HEW, the federal agency charged by statute with execution of the Social Security Act. To be sure, that support is not clearly reflected on the face of HEW's implementing regulations. Thus, the most pertinent of those regulations provides no more than that

"[a]ny recoupment of overpayments permitted by paragraph (a)(12)(i)(a)(2) of this section [referring only to overpayments wilfully caused by AFDC recipients] may be made from available income and resources (including disregarded, set-aside or reserved items) or from current assistance payment or from both." 45 C.F.R. § 233.-20(a)(12)(i)(f).

However, plaintiff herself represents that, in the wake of the decision in *National Welfare Rights Organization v. Weinberger, supra,* "consultation be-

tween attorneys for N.W.R.O. and H.E.W. indicated that H.E.W. allow[s] the practice challenged herein." Plaintiff's Supplementary Brief at 11. It may hardly be gainsaid that HEW's acknowledged alignment with defendants' position stands as a formidable hurdle for plaintiff's case, since "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 384 (1969); see *e. g., New York State Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688, 699 (1973); *Dandridge v. Williams, supra,* 397 U.S. at 481–82, 90 S.Ct. at 1160, 25 L.Ed.2d at 500; *Snell v. Wyman*, 281 F.Supp. 853, 868 (S.D.N.Y. 1968), *affirmed,* 393 U.S. 323, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969).

Plaintiff in effect invites this Court to conclude that an initial deference to HEW's apparent construction of Section 402(a)(8) must inevitably give way to the alleged fact of "compelling indications" that the federal agency, with respect to the issues raised herein, is simply "wrong." Plaintiff notes in passing that this Court would not be the first to refuse to adopt a stance expressly or impliedly assumed by HEW. See, *e. g., Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525, 43 U.S.L.W. 4702 (1975); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 532 (1972); *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *National Welfare Rights Organization v. Weinberger, supra; Gasaway v. McMurray*, 356 F.Supp. 1194 (S.D.N.Y. 1973).

This Court must nevertheless decline plaintiff's invitation. It does so notwithstanding the recent case of *Johnson v. Likens,* Civ. No. 4–75–318 (D.Minn.1975) (unreported decision), in which the District Court of Minnesota has ruled that the statutory disregard stands protected against recoupment of agency-caused overpayments. Admittedly, *Johnson* is to date the case most squarely on point,[3] and thus its authority would ordinarily be persuasive. Nonetheless, *Johnson's* precedential value is seriously undermined by the clearly erroneous premises

---

**3.** Although the parties herein have cited numerous decisions addressed to the Social Security Act and involving actually available versus presumed income, recoupments from sources other than disregards in the case of fraud, and alternative methods of calculating budget deficits without strict application of the "$30 + ⅓"-of-earned-income formula, none of those decisions is particularly instructive on the issue presently before this Court. Nor does *Bradford v. Juras*, 331 F.Supp. 167 (D.Ore. 1971), in which Section 602(a)(8) was read in a light favorable to the position of defendants herein, provide a firm platform from which to launch analysis in this case: that reading was based upon the *Bradford* court's assumption—by now discredited—that State application of the disregard formula was not mandatory.

Plaintiff suggests that the decision in *Williams v. Lavine*, 77 Misc.2d 566, 353 N.Y.S.2d 340 (Sup.Ct. Nassau 1974), in which it was ruled that the disregard "is not to be applied towards needs that would otherwise be met by a public assistance grant, including a discretionary allowance for rent," *id.* at 345, serves to fix the analytic course in the present case. However, that ruling does no more than to reaffirm the principle that the disregard must be honored in the determination of an AFDC recipient's need.

It is something of a puzzlement that plaintiff has chosen to emphasize the *Williams* court's observation that "[t]he work incentive program and its "$30 + ⅓" exclusion in turn comes [sic] from the federal Social Security Act, 42 U.S.C. § 602(a)(8)(A)(ii), which mandates the "disregard" of this portion of earned income. * * *. It is a legislated reward for those individuals who alone assume the double burden of caring for children and a home and working to support both." *Id.* at 344–45. Such observation only marks the point at which this Court's analytic inquiry must begin; it by no means charts the destination of our ruling.

Defendants, in turn, have referred this Court to the Supreme Court of Nassau County decision in *In re De Luca v. D'Elia*, (October 21, 1975). In that decision, the claim that the New York regulation conflicts with Section 402(a)(8) was peremptorily discounted as "without merit." However, the treatment of the recoupment/disregard issue in *De Luca* is so conclusory that this Court hesitates to invoke its support beyond citation.

on which the *Johnson* court rested its decision.

Thus, for example, via a painstaking but somewhat strained analysis of HEW regulations, the *Johnson* court concluded that "HEW would appear not to allow recoupments from disregard income in cases of agency error or non-wilful recipient error." *Id.* at 35. As already indicated, it has been conceded that HEW's actual position is just the opposite.

Moreover, in its attempt to gauge the breadth of the Section 402(a)(8) reference to "determination of need," the *Johnson* court asserted that

"The United States Supreme Court, in explicating § 602(a)(7) and the regulations which implement it, noted that the amount an applicant is paid is based on a § 602(a)(7) determination, and upon a determination of need. [Thus,]

'If * * * the net amount of "earned income" is less than the predetermined statewide standard of need, the applicant is eligible for participation in the program and the amount of the assistance payments will be based upon that difference. * * * *Shea v. Vialpandi* * * *.'

The § 602(a)(7) operation is the operation by which the amount of the assistance payment is calculated. By saying in § 602(a)(8) that the income disregard shall not be considered in the (a)(7) determination, Congress was stating that the income shall be disregarded in determining the amount of the assistance payment." *Id.* at 29 (citations omitted) (emphasis added).

■ Such reasoning obliquely reflects a basic misapprehension of the relation between the budget deficit and the ultimate AFDC grant. The two are not, as the *Johnson* court apparently assumed, functionally identical—although, as is currently true in New York, they may prove to be equivalent in amount. The budget deficit represents the "basis" of the AFDC grant only to the extent that the latter may not exceed one hundred

per cent of the former, although the State may compute the grant as a lesser percentage of the budget deficit. The AFDC grant is thus a function not only of the recipient's need, but also of the administrative imperatives that may be dictated by a State's limited fiscal resources.

■ This is not to say that the State may circumvent the disregard mandate simply by reducing the AFDC grant to reflect a systematic and automatic subtraction of "$30 + ⅓" of earned income from the initially computed budget deficit; such operation would constitute in effect a redetermination of need without allowance for the disregard. To that extent, this Court agrees with the observation in *Johnson* that the State may not achieve by indirection what it is forbidden to accomplish directly. See *Johnson v. Likens, supra,* at 29, 32.

However, I believe that the *Johnson* court read into Section 402(a)(8) more than Congress said or intended. Johnson's reading of the statute as saying that "$30 + ⅓" of earned income "shall be disregarded in determining the amount of the assistance *payment,*" *id.* at 29 (emphasis added), goes too far. That section instead states only that this portion of the earned income should be disregarded in determining the applicant's *need* which, as we have seen, may be equal to or greater than the assistance payment.

The *Johnson* court based its conclusion in part upon its reading of congressional intent, *i. e.,* that "the income disregard work incentive is absolutely essential to the total A.F.D.C. program * * *." *Id.* at 32. It is indeed a familiar rule that, "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but [must] look to the provisions of the whole law and to its object and policy." *United States v. Heirs of Boisdore,* 49 U.S. 113, 122, 8 How. 113, 122, 12 L.Ed. 1009 (1850). Thus, how far the disregard mandate extends may be accurately gauged only after reference is made to the congres-

sional intent that underlies the less-than-definitive language of Section 402(a)(8).

With reference to the legislative purpose, an earlier Court has observed that the statutory disregard

"was intended as an incentive to welfare recipients to seek employment. It was part of a congressional effort made to ensure that an applicant not find it more advantageous to remain on welfare than to seek employment. The legislative history reveals a concern among the Congressmen that one of the stated goals of the [AFDC] program—'to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care'—was not being achieved.

The Senate Finance Committee stated that disregarding some portion of earned income was essential to implement this objective. The Committee in its report explained: 'A key element in any program for work and training for assistance recipients is an incentive for people to take employment. If all the earnings of a needy person are deducted from his assistance payment, he has no gain for his effort.'

\*   \*   \*   \*   \*   \*

The report continued to state that, 'the committee believes that this provision will furnish incentives for members of public assistance families to take employment and, in many cases, increase their earnings to the point where they become self-supporting.'" *X v. McCorkle, supra,* at 1116 (footnotes omitted).

It seems clear that Congress intended that, in the ordinary course of AFDC administration, the earned income disregard should be preserved to the wage earner, intact and undiminished, as a measured impetus to gainful employ-

ment. However, the legislative history retraced and recited above nowhere bespeaks a congressional purpose to shield "$30 + ⅓" of earned income under all circumstances and against every State exigency. In that silence, this Court is left to the guidance of the statutory language as it is informed by "those common-sense assumptions that must be made in determining direction without a compass," *Rosado v. Wyman, supra,* 397 U.S. at 412, 90 S.Ct. at 1218, 25 L.Ed.2d at 455.

■ If, in the process of recoupment, the State's resort to the disregard as an asset "in excess of need" were, as plaintiff urges, a *per se* "determination of need" and hence invalid under Section 402(a)(8), the State would be reduced to the status of a creditor peculiarly disabled from recovering against a debtor who by definition is able to repay. Common sense inexorably directs this Court to assume that Congress would not have settled on such result without having engaged in at least some evidenced debate or without projecting that intent via clear statutory directive. In the absence of such markings of an extra-ordinary legislative will, common sense further compels this Court's conclusion that Congress did not intend Section 402(a)(8) to disallow the limited sacrifice of "$30 + ⅓" of earned income for the compelling sake of overpayment recoveries[4] and a consequently fair apportionment of the limited AFDC funds.

Certainly, as it is applied in the present case, in which the recoupment cancels or reduces the effect of the disregard for only a limited period, there is no destruction of the work incentive, but only a temporary diminution or suspension thereof, and thus no thwarting of congressional intent. It would be easy to imagine more voracious recoupment practices which would effectively kill incentive, but we need not borrow trouble

---

**4.** Whether such recapture of amounts owed to the State conforms with due process, *i. e.,* whether due process demands that the State be limited to the ordinary creditor recourse to

civil action or garnishment, is beside the present point and beyond this single-judge court's cognizance.

by imagining evils[5]; we need only rule upon the case at hand and upon the particular regulation under challenge.

The Court is impelled to rule that the New York regulation does not offend the Social Security Act. Whether the regulation can survive plaintiff's remaining constitutional challenges must be left to the determination of a three-judge court, whose convention must await the appeal of this ruling.[6]

SO ORDERED.

**5.** The Johnson court's reluctance to sanction recoupment from disregards was in no small measure derived from the assumption that

> "if Minnesota [which provides grants in full satisfaction of recipients' needs] is free to recoup from disregard income in these circumstances, so is a State paying less than need. In such a State, disregard income may be the only resource which allows an A.F.D.C. family to rise to the level of minimum subsistence and recoupment from 'excess' income might be recoupment from the mouths of hungry children." *Johnson v. Likens, supra,* at 36.

Neither that reluctance nor that assumption, however, was warranted, in the light of the ruling in *National Welfare Rights Organization v. Weinberger, supra,* and HEW regulations' subsequent conformity therewith. See p. 1047 supra.

Moreover, there is something to be said for the no-less-humanitarian concern that, bowed by and bowing to fiscal realities, a State foreclosed from such recoupments might well be obliged to depart from a policy of granting AFDC payments in full satisfaction of need, in which case "hungry mouths" would constitute the rule, rather than the exception.

**6.** In *Taylor v. Lavine,* 497 F.2d 1208, 1214 (2d Cir. 1974), reversed on other grounds *sub nom. Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), the Second Circuit observed that "[w]here the constitutional claim is sufficient to vest the district court with jurisdiction, it is proper for a single judge to decide the statutory question under pendent jurisdiction * * * and, if he sustains it, to defer requesting a three-judge court under 28 U.S.C. § 2281, pending review." (Citation omitted).