[No. 1415-3.    Division Three.    April 9, 1976.]

BRENDA J. MULVEY, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Kirk W. Robbins* of *Spokane County Legal Services*, for appellant.

*Slade Gorton, Attorney General*, and *James M. Murphy, Assistant*, for respondent.

MUNSON, J.—Brenda J. Mulvey appeals from a judgment affirming the decision of the Department of Social and Health Services in which the appellant's aid to families with dependent children grant (AFDC) was suspended for the month of April and a portion of May 1974.

Appellant contends that certain checks she received and endorsed were not "income" as defined by federal regula-

tion, state law and the Washington Administrative Code. We disagree.

The appellant, who was separated from her husband and had custody of her 2-year-old daughter, was dependent upon an AFDC grant of $208 per month as her sole source of income. In March 1974, her estranged husband presented her with an income tax refund check in the amount of $333 and an earnest money check in the amount of $312.71 acquired from the sale of the parties' home. Both checks were made out to Mr. and Mrs. Mulvey. The appellant endorsed both checks and returned them to her husband, who refused her request to give her any of the proceeds. The appellant received no cash. The next day appellant notified the department of this transaction. She was advised that she had received income which was available to meet her needs and therefore her grant would be reduced accordingly.

At the administrative hearing, the appellant was questioned as to the conversation had with her husband at the time the checks were endorsed:

> What was the substance of that conversation? I mean, did he say, look if you sign the checks we'll be able to get the divorce on and— MRS. MULVEY: Yes. MR. NEILSON: At that time when you signed the checks then, did you think that you were in a way exchanging the speeding up of the divorce for signing the checks? MRS. MULVEY: Yes. MR. NEILSON: So you were getting something for signing the checks? MRS. MULVEY: Yes. . . . MR. NEILSON: So, he was just going to use the money to pay for his Attorney's fees? And at that time that was fine with you because you wanted it to hurry up? MRS. MULVEY: Yes.

Near the close of appellant's testimony she was asked: "Would it be fair to say then that you had an agreement with your husband that if he would expedite the divorce you'd go ahead and sign those checks? MRS. MULVEY: Yes."

In addition to those proceeds used to expedite the divorce, the husband extinguished a community indebtedness incurred as a result of an automobile accident involving appellant; purchased tires for the automobile he was dri-

ving; purchased clothing; rented a tuxedo; and purchased a wedding gift.

After appellant was informed by the department that one-half the proceeds of the two checks would be considered "income" to her, she commenced this action.

The pertinent federal regulation involved, 45 C.F.R. § 233.20 (a) (3) (ii) (c) (1973),[1] stated: "[O]nly such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered;". WAC 388-22-030 (34), in dealing with eligibility, defines income as:

[A]ny appreciable gain in real or personal property (cash or kind) received by an applicant on or after the first of the month in which eligibility is determined and which can be applied toward meeting the requirement of the applicant and his dependents, either directly *or by conversion into money of its equivalent.*

(Italics ours.) RCW 74.04.005 (12) defines income in a similar manner.[2] WAC 388-28-480 (11) states that: "An income tax refund is newly acquired income."

The issue is whether the two checks constitute available income, capable of being applied towards the appellant's requirements so as to serve as a basis for reducing her AFDC grant. We find they constituted available income within the meaning of the aforementioned provisions. The endorsed checks were convertible into money "actually available" to the appellant and demonstrated an "appreciable gain" in her personal property in cash or kind. She exchanged the opportunity to receive cash for the expedi-

---

[1]45 C.F.R. § 233.20 (a) (3) (ii) (D), as amended October 1975, reads: "net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance;"

[2]RCW 74.04.005 (12):

" 'Income'—All appreciable gains in real or personal property (cash or kind) or other assets, which are received by or become available for use and enjoyment by an applicant or recipient after applying for or receiving public assistance: *Provided,* . . ."

tious processing of her divorce action and to reduce the amount of community indebtedness.

Appellant's contention that she was incapable of perceiving her endorsement as "income" is not controlling; it is the interpretation of the law and regulations which controls.

■ Appellant contends the department's action was arbitrary, capricious, and clearly erroneous in light of the record. We disagree. There is substantial evidence to support that action, and it is a reasonable interpretation.

■ Appellant next contends that the aforementioned regulatory provisions are inconsistent. The alleged inconsistency was not raised during the administrative proceedings and therefore cannot be considered on appellate review, unless it raises a constitutional issue; none is raised here. *Bare v. Gorton*, 84 Wn.2d 380, 526 P.2d 379 (1974). Furthermore, we find no inconsistency.

■ Lastly, appellant inferentially urges that the receipt of the income cannot properly be deducted from ongoing public assistance payments unless she has other available funds. *National Welfare Rights Organization v. Weinberger*, 377 F. Supp. 861 (D.D.C. 1974). We respectfully differ, assuming arguendo that such a rule may be applicable where there is an administrative error as in *Redding v. Burlington County Welfare Bd.*, 65 N.J. 439, 323 A.2d 477 (1974). No administrative error is involved in this case. Public assistance appropriations are public monies; overpayments to welfare recipients are no different than overpayment of public officers' salaries or employees' wages. The payment was a benefit improperly conferred and may be recouped by reduction from further wages, salaries, or public assistance payments. Whether the department properly chose to reduce one full month and part of the next may be subject to criticism, but that issue is not reached by this opinion.

Judgment affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied May 17, 1976.

Review by Supreme Court pending February 3, 1977.