537 F.2d 719
 Josephine McGRAW, Individually and on behalf of her minor
dependent children and all persons similarly
situated, Plaintiffs-Appellants,
v.
Stephen BERGER, Individually and as Commissioner of the New
York StateDepartment of Social Services, et al.,
Defendants-Appellees.
 No. 1167, Docket 76--7102.
 United States Court of Appeals,
Second Circuit.
 Argued June 11, 1976.
Decided July 2, 1976.
 
 Lloyd Constantine, Brooklyn (John C. Gray, Jr., Brooklyn Legal Services Corp. B, Brooklyn, N.Y., on the brief), for plaintiffs-appellants.
 Judith A. Gordon, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of N.Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., Rosalind Fink, Asst. Atty. Gen., New York City, on the brief), for defendants-appellees.
 Before FRIENDLY, FEINBERG and VAN GRAAFEILAND, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Josephine McGraw and her nine minor dependent children, recipients of public assistance benefits from New York State under the Aid to Families with Dependent Children (AFDC) program, appeal from a decision of the United States District Court for the Southern District of New York, William C. Conner, J., granting summary judgment for defendants, various New York welfare officials.[1] Plaintiffs seek to invalidate a New York welfare regulation, 18 N.Y.C.R.R. § 352.31(d)(1)(ii),[2] which permits the State to recoup overpayments of welfare benefits caused by agency errors out of the portion of a recipient's earnings that is disregarded in calculating welfare needs under 42 U.S.C. § 602(a)(8)(A)(ii),[3] as inconsistent with that statute. For reasons set forth below, we affirm.
 
 
 2
 * The tangle of federal and state statutes and regulations in the welfare area now rivals the Internal Revenue Code and its attendant regulations as a marvel of complexity. The issues involved in this case will perhaps be easier to understand if put in the context of the structure of the AFDC program, as it particularly affects the McGraw family.
 
 
 3
 The AFDC program, established under Title IV--A of the Social Security Act, 42 U.S.C. §§ 601--10, aims to provide financial assistance to needy dependent children and the adults who care for them. The program is financed in large part by federal funds on a matching basis, but is administered by the states, which have 'broad discretion in determining both the standard of need and the level of benefits.' Shea v. Vialpando, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). State plans, however, must conform to the requirements laid down by the Social Security Act and the regulations of the Department of Health, Education and Welfare (HEW).
 
 
 4
 'Under HEW regulations all AFDC plans must specify a statewide standard of need, which is the amount deemed necessary by the State to maintain a hypothetical family at a subsistence level. Both eligibility for AFDC assistance and the amount of benefits to be granted an individual applicant are based on a comparison of the State's standard of need with the income and resources available to that applicant.' Id. The 'standard of need' set by New York Social Services Law § 131--a(2) for a family of ten is $284 semi-monthly, plus an allowance for shelter that, under the applicable New York regulations, amounts for the McGraws to $59 semi-monthly.[4] This total of $343 is then compared with the 'income and resources' of the family, in this case Ms. McGraw's earnings from her job as a cook's helper in a day care center.
 
 
 5
 Ms. McGraw earns $265.84 semi-monthly. Under 42 U.S.C. § 602(a)(7)[5] and 45 C.F.R. § 233.20(a)(3)(iv)(a), 'expenses reasonably attributable to the earning of (this) income' must be deducted from this amount. In Ms. McGraw's case $49.77 is deducted under this provision. In addition, a further deduction, known as the 'earned income disregard,' is made. Under 42 U.S.C. § 602(a)(8)(A) (ii), the first $30 per month, and one-third of the remainder, of a working adult AFDC recipient's earnings are disregarded in calculating the family's 'income and resources.' This deduction amounts to $98.61 in Ms. McGraw's case.[6]
 
 
 6
 As already indicated, the amount of the assistance payment is based on the difference between the applicant's resources and the state's standard of need, 45 C.F.R. §§ 233.20(a)(2), (3), but the state is not required to pay the full amount, or any particular amount or percentage, of that 'budget deficit.' Jefferson v. Hackney, 406 U.S. 535, 541, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Rosado v. Wyman, 397 U.S. 397, 408--09, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). However, since New York does currently pay 100 per cent of the standard of need, New York Social Services Law § 131--a(3); Hagans v. Berger, 536 F.2d 525, 527 (2d Cir. 1976), the amount of assistance provided semi-monthly to Ms. McGraw and her family is $225.54, arrived at as follows: $343 (the total standard of need) minus $117.46 (Ms. McGraw's earnings of $265.84 less $49.77 work-related expenses and $98.61 earned income disregard).
 
 
 7
 Not surprisingly, in the course of making this intricate calculation, the agency made an error resulting in an overpayment of $47.16 to the McGraws in each semi-monthly pay period for some ten months, for a total overpayment of $990.36. There is no dispute that the agency was responsible for this error, and no contention that Ms. McGraw in any way caused or even noticed the mistake.[7] In April 1975, the New York City Department of Social Services notified the family of the overpayment, and of its intention to recoup the loss. This determination was upheld by the State Department of Social Services after a hearing in August 1975.
 
 
 8
 The New York regulations concerning recoupment distinguish between errors caused by wilful withholding of information by a recipient and other errors. In the former case, 18 N.Y.C.R.R. § 352(d)(2), see note 2 supra, permits recoupment from current assistance grants even if those grants are the recipient's only source of income. Thus, if a family comparable to the McGraws, with a state standard of need of $343 and no earnings or other resources, had wilfully misrepresented its circumstances so as to receive an additional $50 in aid, a state would be permitted under the regulation to reduce future grants below the level to which the family would otherwise be entitled until the amount overpaid was recovered.[8] When, however, the error was not caused by the wilful misconduct of the recipient, recoupment from the grant itself has been held inconsistent with the Social Security Act. National Welfare Rights Organization v. Weinberger, 377 F.Supp. 861 (D.D.C.1974). Accordingly, the applicable regulation permits recoupment only when 'the recipient has currently available income or resources, exclusive of the current assistance payment.' 18 N.Y.C.R.R. § 352(d)(1)(ii). The regulation further provides that 'Exempted income and disregards shall be considered as being currently available.' Thus, in Ms. McGraw's case, the State sought to recoup its overpayment from the part of Ms. McGraw's earnings that was disregarded under 42 U.S.C. § 602(a)(8)(A) (ii) in calculating the amount of her family's AFDC grant.
 
 
 9
 This recoupment is effected by deducting $34.30 from each semi-monthly AFDC payment.[9] Thus, the McGraws' income for a given semi-monthly period consists of the reduced AFDC grant of $191.24 ($225.54 minus the recoupment amount of $34.30), plus her earnings of $216.07 ($265.84 minus $49.77 in work-related expenses), for a total of $407.31. The family thus has $64.31 more than the state standard of need, which they would receive if Ms. McGraw did not work. If it were not for the recoupment provisions, the family's total income would exceed the standard of need by $98.61, the full amount of the disregard.
 
 II
 
 10
 This brings us, at last, to the crux of this lawsuit: whether the recoupment here conflicts with the earned income disregard provision of the Social Security Act. In the district court, plaintiffs argued that the State regulation, see note 2 supra, violates the Act in two ways. First, defining disregarded earnings as income 'currently available' to replace the portion of the assistance payment withheld for recoupment is improper because those earnings must be disregarded in computing the amount of the assistance payment. Second, congressional intent that working AFDC recipients have additional income, in the exact amount of $30 plus one-third of the remainder of their earnings beyond that received by non-working recipients, is violated by recoupment of overpayments from that additional income.[10]
 
 
 11
 On the first argument, Judge Conner ruled that plaintiffs confused the determination of need with the amount of the welfare payment. Congress only required the disregard of a portion of recipients' earnings 'in making the determination under clause (7),' that is, 'in determining need.' 42 U.S.C. §§ 602(a)(8), (7); see notes 3 and 5 supra. But as the discussion of the AFDC program above indicates, a state is permitted to set the amount of the payment at a level less than need. Thus, the district court held that recoupment is a separate process affecting the amount of the assistance payment, and resort to the disregarded earned income in this process does not detract from the state's earlier compliance with the statutorily-required disregard of that income in calculating need.
 
 
 12
 As to the second argument, Judge Conner held that while Congress clearly required that states in determining need disregard exactly as much earned income as specified in the statute, X v. McCorkle, 333 F.Supp. 1109 (D.N.J.1970), aff'd per curiam sub nom. Engelman v. Amos, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971),
 
 
 13
 the legislative history . . . nowhere bespeaks a congressional purpose to shield '$30 $ 1/3' of earned income under all circumstances and against every State exigency.
 
 
 14
 The district court concluded that the New York recoupment procedure had a limited effect on the congressional purposes of providing work incentives to welfare recipients, while meeting a compelling state need to recover erroneous overpayments.
 
 
 15
 In addition to this analysis of plaintiffs' arguments, Judge Conner relied on HEW's support of defendants' position. Rejecting all of plaintiffs' contentions, the district court held that the challenged State regulation does not violate the federal statute. This appeal followed.
 
 III
 
 16
 In this court, plaintiffs essentially repeat the contentions made below. Their arguments and those of the State, outlined in more detail below, each represent important policies. On balance, however, we find the arguments of the State more convincing, particularly because its position is supported by the agency responsible for the execution of the complex federal statutory scheme.
 
 
 17
 There is considerable force to plaintiffs' claim that the State may not, consistently with the Social Security Act, define earned income that has been disregarded in calculating eligibility as 'exclusive of' the current assistance grants and as 'currently available' income apart from the AFDC payment. See note 2 supra. According to plaintiffs, it is irrational to say that the disregarded earned income is 'exclusive of' the welfare payment when the disregard of that income is a necessary step in calculating the amount of the payment. Therefore, the State cannot permit recoupment of non-fraudulent overpayments from the disregarded earned income.
 
 
 18
 The State responds that this argument confuses the state standard of need with the amount of the payment.[11] As noted above, the states are free not only to set the standard of need under the AFDC program, but also to determine how much of an applicant's admitted need is to be met. States may set the amount of AFDC assistance at some percentage of need, or grant 100 per cent of need up to a certain dollar limit. The earned income disregard is required in determining an applicant's need, but New York's recoupment provisions only affect the amount of payment. Therefore, the State argues, its recoupment regulations deal with an area the Social Security Act does not reach.
 
 
 19
 There is, however, a significant limitation to the State's argument. Surely, as the district court noted, a state may not calculate an applicant's need in accordance with the requirements of section 602(a)(8)(A)(ii), but circumvent these requirements by providing that AFDC payments will be limited, in the case of working recipients, to an amount equal to the calculated need minus the amount of the earned income disregard. Nevertheless, with that qualification in mind, the State is correct that its recoupment provisions are not literally reached by the federal statute. The statute does not deal with recoupment in any way, and by its terms requires the earned income disregard only in the calculation of need.[12] To this extent at least, the State's distinction between the calculation of need and the amount of the payment received by the recipient has validity. The New York regulation challenged here only utilizes the disregarded income in the context of recoupment, and does not circumvent the work incentive provisions of the statute by ignoring or limiting the earned income disregard for all AFDC payments.
 
 
 20
 Moreover, in this case, the State may plausibly argue that even the amount of the assistance payment is not being reduced. Although plaintiffs are correct that the check received by an AFDC recipient is smaller because of the recoupment, the State practice of reducing the amount of the assistance check is the functional equivalent of paying the same amount of assistance and proceeding separately against the income earned by the recipient in order to recoup sums previously overpaid. Unlike the situation in such cases as King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), this earned income concededly[13] represents actual cash in plaintiffs' possession in excess of the standard of need, not merely supposed or hypothetical assets. Unless the legislative intent were clear, we would be reluctant to conclude that Congress intended to prohibit the State from attempting to recover its losses by attaching otherwise disregarded earnings of welfare recipients who owed it money. The State's recoupment procedure here is a shorthand method of reaching that result.
 
 
 21
 Plaintiffs argue that Congress intended every working AFDC recipient, including those from whom past overpayments are being recouped, to have exactly '$30 and 1/3' more than a similarly situated unemployed recipient. Certainly that was the amount of the work incentive that Congress provided, and a state may not provide a lesser amount. X v. McCorkle, supra. But the legislative history of the earned income disregard reveals only the general purpose of the provision, and gives no indication that Congress considered the impact of the disregard on recoupment. See, e.g., S.Rep. No. 90--744, 90th Cong., 1st Sess., 2 U.S.Code Cong. & Admin.News 2981--82, 2994--96 (1967).
 
 
 22
 Thus, the wording of section 602(a)(8)(A)(ii) does not specifically prohibit the utilization of disregarded earned income as a source of recoupment, and the legislative history indicates that Congress did not focus on the question. We must therefore consider the policies underlying the statute. Granted that any use of the disregarded earnings to reduce the amount paid to a recipient detracts in some degree from the congressional purpose of providing an incentive to AFDC recipients to seek employment, that does not end the inquiry. The underlying policies of the statute as a whole must also be considered. In this regard, the district court correctly pointed to the states' authority to set the amount of payment below the amount of need as evidence that
 
 
 23
 The AFDC grant is . . . a function not only of the recipient's need, but also of the administrative imperatives that may be dictated by a State's limited fiscal resources.
 
 
 24
 In this case, the State argues that permitting recoupment out of disregarded earnings is a legitimate reconciliation of the policy of work incentives underlying the disregard with the State's need to protect its limited resources devoted to AFDC by recovering erroneous overpayments. The State's interest is great, and the impact on the work incentive is limited, because it is felt by a small proportion of recipients, and only for a limited period.
 
 
 25
 We find the State's arguments persuasive, but the issue remains a close one. Cf. Johnson v. Likins, No. 4--75--Civ--318 (D.Minn. Oct. 10, 1975).[14] In these circumstances, the position of HEW, as the federal administrative agency responsible for enforcing the provisions of the federal statute in this highly complex and technical area, seems to us particularly significant. Plaintiffs concede that HEW regulations permit the practice followed by New York. These regulations are not a model of clarity.[15] 45 C.F.R. § 233.20(a)(12)(i)(A) (1) provides that, as to non-fraudulent overpayments,
 
 
 26
 (A) The State may not recoup any overpayment previously made to a recipient:
 
 
 27
 (1) Unless the recipient has income or resources exclusive of the current assistance payment currently available in the amount by which the agency proposes to reduce payments.
 
 
 28
 This language does not speak directly to the critical issue in this case, which is whether the State may consider the earned income disregard as 'income or resources exclusive of the current assistance payment currently available.'
 
 
 29
 HEW, however, has clarified its position by actions subsequent to the adoption of this regulation. A department memorandum cited by defendants states that:
 
 
 30
 In cases where the overpayment did not result from fraud or wilful withholding of information, this section of the regulation is interpreted to provide that a State welfare agency may recoup from any exempt income or resources that are available.[16]
 
 
 31
 Moreover, HEW submitted a brief amicus curiae to the court in Johnson v. Likins, supra, supporting the position of the state defendants in that case, whose regulation is similar to that challenged here. See note 15 supra. HEW has also authorized the parties to submit that brief to this court, presumably as an accurate statement of HEW's views. Finally, HEW has proposed a new regulation, which quite clearly authorizes the challenged New York regulation, by permitting a state to define 'income currently available' to 'include . . . disregarded income.' Proposed 45 C.F.R. §§ 235.15(b)(1)(ii)(A), 235.15(b) (2), 41 Fed.Reg. 8068 (Feb. 24, 1976).[17]
 
 
 32
 We agree with the State and the district court that when the agency entrusted with the execution of a federal statute has interpreted that statute, it is entitled to considerable deference. Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). The Supreme Court has applied this rule to HEW interpretations of the Social Security Act. New York Department of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). As indicated above, we believe that HEW's position[18] is a reasonable one, which attempts to accommodate differing policies without doing violence to the congressional intent. Under all the circumstances, we conclude that the challenged New York regulations does not conflict with the Social Security Act.[19]
 
 
 33
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The defendants are the Commissioners of the New York State and New York City Departments of Social Services, and the New York State Department of Social Services. For convenience, we will refer to the defendants collectively as the State
 
 
 [2]
 18 N.Y.C.R.R. § 352(d) provides, in pertinent part:
 (d) Recoupment of overpayments. (1) Except as provided in paragraph (2) of this subdivision, recoupment of overpayments of assistance including overpayments resulting from assistance paid pending a hearing decision shall be treated as follows:
 (i) Recoupment shall be limited to over-payments made during the 12 months preceding the month in which the overpayment was discovered.
 (ii) Recoupment of any overpayment made to a recipient shall not be required unless the recipient has currently available income or resources, exclusive of the current assistance payment. Exempted income and disregards shall be considered as being currently available.
 (2) Where overpayments were occasioned or caused by a recipient's wilful withholding of information concerning his income, resources, or other circumstances which may have affected the amount of the public assistance payment, recoupment of prior overpayments from current assistance grants shall be made irrespective of current income and resources. In such cases, recoupment shall not be limited to overpayments made during the 12 months preceding the month in which the overpayment was discovered.
 
 
 [3]
 This statute requires state AFDC plans to
 (8) provide that, in making the determination under clause (7), the State agency--
 (A) shall with respect to any month disregard--. . .
 (ii) in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month (except that the provisions of this clause (ii) shall not apply to earned income derived from participation on a project maintained under the programs established by section 632(b)(2) and (3) of this title).
 The reference to 'clause (7)' is to 42 U.S.C. § 602(a)(7), set out in note 5 infra.
 
 
 [4]
 New York provides the actual amount of rent paid up to certain limits according to locality and family size. 18 N.Y.C.R.R. § 352.3(a)
 
 
 [5]
 § 602(a)(7) requires state AFDC plans to provide, subject to § 602(a)(8), note 2 supra, that
 the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income.
 
 
 [6]
 The earned income disregard is not applied when the earned income exceeds the applicant's standard of need, unless the applicant received AFDC assistance at some time during the preceding four months. 42 U.S.C. § 602(a)(8)(D)
 
 
 [7]
 The state informs us that according to its surveys, about 42% of all overpayments are agency caused. Such agency-caused errors cost the state approximately $26.8 million in one six-month period
 
 
 [8]
 The amount by which future grants could be reduced is limited by 18 N.Y.C.R.R. § 352(d)(4), which provides:
 (4) The proportion of the current assistance grant that may be deducted for recoupment purposes shall be limited on a case-by-case basis so as not to cause undue hardship, and in no case shall exceed 10 percent of the household needs, and shall continue until such time as the excess payments have been recovered, except that where two or more recoupments are made simultaneously for different reasons or arising from different circumstances, the total reduction in the assistance grant shall not exceed 15 percent of the household's needs. In the event the amount required to be reduced hereby is greater than the amount of the current grant payments, such payments shall be withheld until the amount of the excess grants has been recouped.
 
 
 [9]
 The extent to which the New York regulations permit recoupment is unclear. Before us, the State takes the position that 18 N.Y.C.R.R. § 352(d)(4), note 8 supra, applies to recoupment of agency-caused overpayments as well as of fraudulent ones, and indeed, in Ms. McGraw's case the amount of recoupment has been limited, in accordance with that regulation, to 10% of household needs, or $34.30 per semi-monthly check. On the other hand, the language of the regulation, which refers to recoupment from 'the current assistance grant' can be interpreted as applying only to recoupment of overpayments caused by wilful recipient misconduct under § 352(d)(2) ('recoupment . . . from current assistance grants'), and not to recoupment of innocent overpayments under § 352(d)(1)(ii) (no recoupment from 'the current assistance payment'). Plaintiffs point as well to an interpretive memorandum of the New York City Department of Social Services, I.M. $16/75, which refers to the § 352(d)(4) limitation only in the context of § 352(d)(2) recoupment, and notes that while recoupment against Ms. McGraw has in fact been limited, the agency initially threatened her with broader recoupment. Since plaintiffs have only been subjected to the more limited recoupment, and argue that any recoupment against the earned income disregard is illegal, we do not have to resolve this problem
 
 
 [10]
 Plaintiffs also argued that the regulation is unconstitutional. The district court held that these arguments were substantial enough to require a three-judge court, then proceeded to deal with the pendent statutory claims. See Hagans v. Lavine, 415 U.S. 528, 543--45, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)
 
 
 [11]
 Such confusion is understandable in the case of New York, because it pays AFDC assistance at 100% of need, so that the two amounts are usually identical
 
 
 [12]
 We note that income from certain other sources is subject to much broader disregard provisions. For example, Congress has provided that aid under the Food Stamp Act of 1964 'shall not be considered to be income or resources sources for any purpose under any Federal or State laws . . ..' 7 U.S.C. § 2016(c)
 
 
 [13]
 Reply Brief of Plaintiffs-Appellants, at 3--4
 
 
 [14]
 In Johnson, the court held, on a motion for a preliminary injunction, that Minnesota's recoupment regulations, analogous to the New York regulation challenged here, violated the Social Security Act
 
 
 [15]
 Indeed, the court in Johnson v. Likins concluded that such a recoupment policy was contrary to the federal regulations. HEW has since filed an amicus brief in that case expressing the view that regulations permitting recoupment of earned income disregarded in calculating need are not in conflict with the federal statute or regulations
 
 
 [16]
 Memorandum from James S. Wright, Jr., Administrator, Social and Rehabilitation Service, HEW, to Neil P. Fallon, Regional Commissioner, SRS, Boston, dated August 27, 1974
 
 
 [17]
 The proposed regulation provides:
 (b) Conditions applicable to recoupment from current assistance. (1) The State agency may recoup from current assistance payments: . . .
 (ii) On the State agency's initiative, without seeking the recipient's consent, only if:
 (A) The recipient has income exclusive of current assistance and of the income that was considered in determining the amount of such assistance. (i.e. countable non-exempt income) or resources, currently available in the amount by which the agency proposes to reduce assistance: . . .
 (2) For purposes of paragraph (b)(1)(ii)(A) of this section, the 'income currently available' may include income set aside for future needs of a child or for carrying out a plan of rehabilitation, and disregarded income (with certain exceptions not here relevant.)
 
 
 [18]
 Although HEW's position is not yet clearly embodied in regulations, its consistent interpretation of the present regulation and the position it has taken in litigation, together with the regulation it has proposed, seem to us a sufficiently official expression of its interpretation of the statute to be entitled to deference
 
 
 [19]
 This disposition makes it unnecessary for us to decide whether the district court erred in refusing to certify a class action. Since summary judgment for the defendants was proper, the class action question is moot. If the action now proceeds to a three-judge court to consider plaintiff's constitutional claims, plaintiffs may seek class action status in that forum