562 F.2d 831
 Debra SWASEY et al., Plaintiffs, Appellees,
v.
Robert WHALEN, Commissioner of the New Hampshire Department
of Health and Welfare, Defendant, Appellee,
Joseph A. Califano, Jr., Secretary of Health, Education and
Welfare, Defendant, Appellant.
Debra SWASEY et al., Plaintiffs, Appellees,
v.
Robert WHALEN, Commissioner of the New Hampshire Department
of Health and Welfare, Defendant, Appellant.
 Nos. 77-1057, 77-1067.
 United States Court of Appeals,
First Circuit.
 Argued May 2, 1977.
Decided Sept. 16, 1977.
 
 1
 Donald Etra, Atty., Civ. Div., Appellate Section, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., William J. Deachman, U. S. Atty., Concord, N. H., and William Kanter, Atty., Civ. Div., Appellate Section, Dept. of Justice, Washington, D. C., were on brief for Joseph A. Califano, Jr., Secretary of Health, Education and Welfare, Washington, D. C., appellant.
 
 
 2
 James C. Sargent, Jr., Asst. Atty. Gen., Concord, N. H., with whom David H. Souter, Atty. Gen., Concord, N. H., was on brief, for Robert Whalen, etc., appellants.
 
 
 3
 Henry A. Freedman, New York City, with whom Mary R. Mannix, New York City, and Charles D. Burkam, Manchester, N. H., were on brief, for appellees.
 
 
 4
 Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, DOOLING, District Judge.*
 
 
 5
 DOOLING, District Judge.
 
 
 6
 Title IV A of the Social Security Act, 42 U.S.C. §§ 601 et seq., by subdivision (7) of Section 602(a) requires state plans for aid to families with dependent children (AFDC) to provide that "in determining need" for assistance payments the state agency shall "take into consideration any other income and resources" of any relative claiming aid, except that the plan must also
 
 
 7
 "(8) provide that, in making the determination under clause (7), the State agency(A) shall with respect to any month disregard
 
 
 8
 (ii) in the case of earned income of . . . a relative receiving such aid . . . the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month . . . "
 
 
 9
 Appellee and some seventy-five other members of the class whom she represents are eligible to receive AFDC payments, and all have earned income which is disregarded to the extent of $30 plus one third of the remainder "in determining need." All had earlier innocently received AFDC payments to which they were not entitled, and the state attempted to withhold all or part of their current AFDC payments to recoup the overpayments. The withholdings were limited in each case to one half of the earned income disregard, as provided by Regulation Section 3451.2(a)(2) of the New Hampshire Public Assistance Manual, which reads:
 
 
 10
 "In the case of overpayment made as a result of administrative error or recipient misunderstanding the amount of recoupment shall be equal to a reduction of 50% of earned disregarded income. If an individual in this category of overpayment has no disregarded income, then there shall be no recoupment."
 
 
 11
 The federal regulation on recoupment (45 C.F.R. § 233.20(a)(12)(i)) provides:
 
 
 12
 "(A) The State may not recoup any overpayment previously made to a recipient:
 
 
 13
 (1) Unless the recipient has income or resources exclusive of the current assistance payment currently available in the amount by which the agency proposes to reduce payments . . . ."
 
 
 14
 No provision of Title IV A of the Social Security Act either explicitly authorizes or in terms forbids recoupment for overpayments of AFDC assistance.
 
 
 15
 The district court held that the New Hampshire recoupment regulation and the related federal regulation were invalid in permitting or requiring reduction of current AFDC benefits in order to recoup prior overpayments when the overpayments were caused by agency or recipient error and the recipient had earned income required to be disregarded pursuant to 42 U.S.C. § 602(a)(8)(A). The court considered that in practical effect such recoupment violated the work-incentive policy of Section 602(a)(8)(A), and that there was a want of fairness in requiring AFDC recipients, and particularly needy children, to suffer because of agency error. Pending appeal the state has conformed to the district court decision and authorized payment of benefits without recoupment.
 
 
 16
 The facts in the case of the named appellee illustrate the problem. Ms. Swasey had received overpayments of $1,425 during 1975. She was employed, earned a gross income of $471 a month, and she had "expenses reasonably attributable to earning of" the $471 amounting to $129 a month. Her earned net income was, then, $342 a month. The standard of need established for persons in the position of Ms. Swasey and her infant son (cf. 45 C.F.R. § 233.20(a)(1), (2)) was $232 a month. In determining "need" for the purpose of determining the amount of the assistance payment, the state plan was required by Section 602(a)(7) to take into consideration any other income of any relative claiming aid (here, Ms. Swasey). Plainly, Ms. Swasey's net income exceeded the applicable "standard of need." However, Section 602(a)(8) required that $30 plus one-third of the gross income, or $177, be disregarded "in determining need" under Section 602(a)(7). The calculation of need, therefore, was
 
 
 17
 Standard of need $232
Gross Income $471
Disregard 30 k 441/3 $177
Expenses $129 306 165
 ----------------
Assistance amount $ 67
 
 
 18
 But for the $1,425 of overpayments Ms. Swasey's monthly assistance payments would have been $67. Since the earned income "disregard" was $177, the state withheld the entire assistance payment.
 
 
 19
 Overpayment caused by agency error has been common enough over the years to have been considered in the Department of Health, Education, and Welfare (HEW) Handbook of Public Assistance Administration as early at least as 1949. The 1949 Handbook contemplated recovery of overpayments by reduction of future assistance payments to a level which would "still enable the recipient to meet his current requirements without undue hardship." The Handbook of 1967, paragraph 3120 provided that current payments could not be reduced because of prior overpayments if the recipient no longer had the income available. In 1968 paragraph 3120 was altered to provide that
 
 
 20
 "Current payments cannot be reduced because of prior overpayments unless the recipient has income or resources currently available in the amount by which the agency proposes to reduce payment . . . "
 
 
 21
 That language continued into 45 C.F.R. § 233.20(a)(3)(ii)(d) without substantial change. Such a case as Cooper v. Laupheimer, E.D.Pa.1970, 316 F.Supp. 264, invalidating a Pennsylvania regulation that provided for recoupment without regard to need, underlined the necessity for requiring recoupment to be limited to means currently available in excess of AFDC "need." Cf. Bradford v. Juras, D.Or.1971, 331 F.Supp. 167, 170. (45 C.F.R. 233.20(a)(3)(ii)(d) given effect); Holloway v. Parham, N.D.Ga.1972, 340 F.Supp. 336, 343-344 (same). Note Acosta v. Swank, N.D.Ill.1970, 318 F.Supp. 1348 (reflecting voluntary conforming of practice in recouping mistaken emergency payments to restrictions of Section 233.20(a)(3)(d)).
 
 
 22
 In 1973 the provision for recovering overpayments was removed from Section 233.20(a)(3) and a new subdivision (12) was added, entitled "Recoupment of overpayments and correction of underpayments." It authorized inclusion in state plans of provision for recoupment of innocent overpayments made during the twelve months preceding discovery of the overpayment, and provided that
 
 
 23
 "(C) The plan may provide for recoupment from available income and resources (including disregarded, set aside or reserved items) or from current assistance payments or from both; and
 
 
 24
 "(D) If the recoupments are made from current assistance payments, the State shall establish reasonable limits on the proportion of such payments that may be deducted, so as not to cause undue hardship on recipients."
 
 
 25
 The new regulation was read in National Welfare Rights Organization v. Weinberger, D.D.C.1974, 377 F.Supp. 861, 864, as permitting states to recoup overpayments despite the fact that the recipient, who by definition lives in straitened circumstances, may lack the means from which the overpayment is to be recouped, and despite the absence of fault on his part. The court pointed out that the "other income and resources" to be taken into consideration in determining "need" under Section 602(a)(7) must be in fact available to a recipient for current use on a regular basis (377 F.Supp. at 868), that the statute excludes from consideration income and resources presumed without support in fact to be available, and that to permit recoupment of overpayments even though it may come only from a reduction in current assistance payments would change the recipient's monthly payment, though his financial circumstances were unchanged except for the past overpayment, in reliance on an impermissible presumption of the continuing availability of the overpaid sums. The court relied on King v. Smith, 1968, 392 U.S. 309, 319 (fn.16), 334, 88 S.Ct. 2128, 20 L.Ed.2d 1118, and Lewis v. Martin, 1970, 397 U.S. 552, 555-556, 559-560, 90 S.Ct. 1282, 25 L.Ed.2d 194. Cf. Hagans v. Berger, 2d Cir. 1976, 536 F.2d 525 (semble emergency rent advances may be recouped unrestrictedly; they are not erroneous overpayments); but cf. Acosta v. Swank, supra.
 
 
 26
 HEW, in prompt response to the "NWRO" decision, dispensed with normal rule making procedures, and under date of June 12, 1974, rewrote Section 233.20(a) (12) in its present form. See 39 F.R. 22268.
 
 
 27
 There is no merit in the contention that the earned income disregard is so far integral to the determination of need under Section 602(a)(7) that it can no more be invaded for recoupment than can the current assistance payment. The burden of the authorities and of the mainstream of administrative practice has been that the "other income and resources" referred to in Section 602(a)(7) as subtractable from the standard of need in arriving at individual need or sought to be subjected to recoupment, must be existent and currently available income or resources that actually support the need; on the same principle, it is if, and only if, there are income or resources genuinely and currently available which are not subtractable from the standard of need in computing Section 602(a)(7) "need" that such amounts may be used to measure the amount by which assistance payments may be reduced by recoupments. It is only because such income or other resources are not directly used or usable to reduce the "need" in making the determination of Section 602(a)(7) that they may be used as a basis for recoupment from the assistance payments that would otherwise be made; the federal regulation requires not an assumption of availability but a factual ascertainment that there remain genuinely and currently available to the family amounts of other income or resources sufficient after giving effect to recoupment fully to meet the family's need as determined under Section 602(a)(7).
 
 
 28
 In Ms. Swasey's case recoupment left in her hands current amounts more than equal to the standard of need applicable in her case. It is true that the part of her "earned income disregard" of $177 accounts for that fact, just as its disregard accounts for the determination under Section 602(a)(7) that the family need was $67 a month. Nevertheless, the withholding of the assistance payment does not deny but affirms the need calculation, it affirms the recipient's eligibility under Title IV A and for Medicaid purposes, and, since based on the actual availability of current income that has not been subtracted in determining need, it does not prevent the satisfaction of the determined need.
 
 
 29
 However, the district judge noted that, in addition to incurring $129 of expenses that, for Section 602(a)(7) purposes, were treated as reasonably attributable to the earning of her gross income, Ms. Swasey incurred other work related expenses which did not enter into the "other income" calculation of Section 602(a)(7). Some part of such expenses may enter into a determination under Section 233.20(a)(12)(A)(i), of the amount of disregarded income that Ms. Swasey has "currently available." Administration of the New Hampshire regulation must be read as presupposing that requirement.
 
 
 30
 Appellees insist that recoupment withholds payment of the benefit to which the statute entitles the recipient, and does so without any such explicit statutory authority as exists elsewhere in Title 42. Under 42 U.S.C. § 404(a), (b) overpayments of federal old age and survivors insurance benefits are adjusted by decreasing later payments, unless that would defeat the purpose of the title or be "against equity and good conscience." When there are overpayments of supplemental security income for the aged, blind and disabled,42 U.S.C. § 1383(b) provides that later payments are adjusted unless that would defeat the purposes of the title or be against equity or good conscience. Appellants, per contra, say that 42 U.S.C. § 603(b)(2)(B) in giving HEW a credit against the amount it would otherwise have to pay to a state for a pro rata share of the state's AFDC recoveries, implies that there will be such recoveries. The existence of Sections 404(a), (b) and 1383(b) does not suggest that some such section would be required in Title IV A to authorize recoupment; the sections may equally be taken to restrict the exercise of the right of recoupment that would otherwise exist apart from statute. And Section 603(b)(2)(B) has no certain reference to recoupment as a mode of recovery.
 
 
 31
 But recoupment generally requires no authorization. One might hesitate to identify the state's right as recoupment rather than as equitable set-off, but there is no ground for denying the existence of the power to withhold payment as a starting point for analysis of the question of the occasions on which there is a right to exercise it. The state in any other context could as a matter of course withhold payment until the debt owed to it was paid. The inquiry is whether the recoupment is forbidden in the AFDC context expressly or by implication. The only limitation implicit in Section 602(a)(7), (8) or (10) is that spelled out in the cases and regulations, that it may not be resorted to unless the need of the family unit is met by income or other resources which are actually and currently available and sufficient in amount, and which have not been subtracted from the standard of need in computing Section 602(a)(7) need.
 
 
 32
 The argument appellees press most strongly is that the congressional policy expressed through the earned income disregard is so clear and strong that it cannot tolerate the necessarily disincentive effect of using the disregard as the basis for denying assistance payments otherwise due. The place in the AFDC program of the work incentive as introduced into the Act in 1968 is certainly important. The work incentive program then introduced was made up not only of the provisions in Section 602(a)(8) for excluding part of earned income in determining need, but also of related provisions, including the establishment of a new and elaborate work incentive and training program (42 U.S.C. §§ 630-644) and making provision for state day care services (42 U.S.C. § 622(a) (1)(C)). But the program is not concerned with the past overpayments matter; nothing in the statute itself or in the legislative history suggests that the Congress adverted to the idea that the earned income disregard should be exempt from recoupment. There is no basis for inferring that, if the Congress had adverted to the matter, it would have decided against recoupment rather than in favor of allowing it. The two subject matters are unrelated, and the coincidence of earned income disregards with overpayments is necessarily a chance one.
 
 
 33
 To say that the recoupment is a disincentive to earning is true only in the sense that income devoted to debt retirement is never enjoyed as is income otherwise expended; working to pay creditors can rarely be sensed as rewarding. But that does not signify that, if the means to pay are at hand, in the harsh terms of availability used in determining need for public assistance purposes, payment need not be made because the real source of payment is earnings that were not subtracted from the need standard in determining need.
 
 
 34
 It is argued that exemption from recoupment for the disregard may be inferred from the fact that Section 602(a)(8) directs the state not to disregard any earned income of persons who have terminated or rejected employment in certain circumstances or who had income in excess of their need unless for at least one of the preceding four months they were aid recipients. The contention is that only in those circumstances may the income be subtracted in determining need, so reducing or extinguishing the amount of the assistance payment. Again, however, recoupment does not affect the need calculation and the determination of the assistance payment; it presupposes it, and makes it the subject of recoupment upon assurance that there exist in at least equal amount currently available income and resources from other sources that have not been subtracted from the standard in arriving at statutory need and the consequent amount of the assistance payment.
 
 
 35
 It is clear that the earned income disregard is mandatory. Mr. X v. McCorkle, D.N.J.1970, 333 F.Supp. 1109, aff'd sub nom. Engleman v. Amos, 1971, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143, accordingly, invalidated the New Jersey regulation because it failed to exclude the earned income disregard from family income in determining the amount by which such income fell short of the state's standard of need; the court rejected the argument that because the state's "administrative ceiling" was set one third above "need" as defined by the state, a substantial equivalent of the statutory earned income disregard existed; it was not the mathematical equivalent, and might affect different families in different ways. The court could have added that it might affect eligibility by short-cutting the determination of need under § 602(a)(7) through exclusion of earned income disregard.
 
 
 36
 Jefferson v. Hackney, 1972, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285, is clear that Section 602(a)(8) and the work incentive policy it implements do not require the states to maximize the effect of the work incentive policy. There the Court sustained the Texas plan, which provided AFDC families with 75% of the state's standard of family need. In each case Texas first computed family need, reduced that figure to 75%, and then deducted outside income as reduced by the earned income disregard. Other states first computed need, then deducted outside income as reduced by the earned income disregard, and then applied the state's percentage reduction factor. The mathematically necessary consequence was to reduce assistance payments by maximizing the reductive effect of earned income, and by the same means, to deny AFDC eligibility in a larger number of instances. The Court rejected the argument that the statute required Texas to choose the mode of computation that resulted in greater work incentives for recipients (406 U.S. at 544, and (dissent) 554, 92 S.Ct. 1724).
 
 
 37
 The policy of the work incentive sections is not the only relevant policy. The state and federal governments have an obvious policy interest in recovering erroneously disbursed funds; public assistance funds are not readily appropriated, and conservation within the administrative program itself is a practical imperative. Moreover, knowledge of the recoupment remedy available to the state may well be supposed an incentive to voluntary correction of errors. Perhaps the data from New Hampshire alone are not demonstrative of what can be expected under other states' recoupment programs, but New Hampshire's experience of the 75 recoupment cases among its 8,342 AFDC families does not suggest that recoupment has in fact discouraged earnings.
 
 
 38
 The two appellate courts which have directly considered the issue presented in this case have both reached the conclusion that recoupment is not inconsistent with the policy objectives of the work incentive program. McGraw v. Berger, 2d Cir. 1976, 537 F.2d 719, sustained the New York recoupment regulation; the New York regulation limits recoupment to cases in which the recipient has currently available income exclusive of assistance payments and treats exempt income and disregards as being currently available; recoupment may not exceed 10% of household needs. The court noted that the interpretation of the statute by the agency charged with its administration is entitled to deference (New York State Dept. of Social Services v. Dublino, 1973, 413 U.S. 405, 420-421, 93 S.Ct. 2507, 37 L.Ed.2d 688), and found that HEW's interpretation, as manifested by its position taken in litigation of the issue, was a reasonable attempt to accommodate differing policies without doing violence to the intention of Congress. The same result was reached by the Supreme Court of Minnesota in Steere v. State, Department of Public Welfare, 1976, Minn., 243 N.W.2d 112; the Minnesota regulation, like New Hampshire's, limited recoupment to one half the disregarded income; the court upheld the recoupment as consistent with the federal case law, since the Minnesota scheme left the recipient more than sufficient income to meet minimum levels of need established under the AFDC program. The court attached weight to the views of the HEW, cited the district court decision in McGraw v. Berger, S.D.N.Y.1976, 410 F.Supp. 1042, with approval, and distinguished without approving Johnson v. Likins, D.Minn.1975 (4-75 Civ. 318), decided on motion for a preliminary injunction.
 
 
 39
 Johnson v. Likins relied, both in the 1975 decision on the injunction and in the final 1977 decision, on the fact that recoupment computations related the "disregards" to need in determining the extent to which recoupment could be permitted directly to affect the payment of assistance, and hence necessarily did "regard" what the statute requires to be disregarded in making the need determination of Section 602(a)(7). The analysis appears to be at fault, and the point of its fallacy is made evident in the court's statement that the state's "interpretation of the recoupment regulation provides no principled stopping point which would limit permissible recoupment to anything less than all of a recipient's income." But the stern limiting principle is that the recoupment may not exceed the amount of actual currently available income or resources which have not been subtracted from the need standard in determining need and, in consequence, determining the amount of the assistance payment. Ultimately, the district court gave decisive weight to the work incentive policy as against fiscal concerns, and to the consideration that the low level of the state standards of need made meaningless the assumption that families eligible for AFDC can have a genuinely available excess of current income or resources for paying debts out of their at best meagre assistance grants. For the reasons already given the weight to be accorded the work incentive policy is not decisive in the balance of interests involved. The statute and regulations may not be given a forced interpretation to reach a result in the overpayment recoupment cases that could not have a parallel in the case of other AFDC recipients.
 
 
 40
 Reversed for further proceedings consistent with this decision.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation