UNITED NEIGHBORS CIVIC ASSOCIATION OF JAMAICA, INC., Alexander Murphy, Mildred Murphy, Max Gray, Dorothy Gray, Bernice Mercer, Andrew Mercer, Hulda Major, Agnes Wilkens and Moses Wilkens, Plaintiffs,

v.

Samuel R. PIERCE, Jr., as United States Secretary of Housing and Urban Development, Anne M. Gorsuch, as United States Environmental Protection Agency Administrator, Edward Koch, as Mayor of the City of New York, and Northeastern Conference of Seventh Day Adventists, Defendants.

No. 83 CIV 0181.

United States District Court, E.D. New York.

May 5, 1983.

Paul E. Kerson, Kew Gardens, N.Y., for plaintiffs.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for defendants Pierce and Gorsuch; Rodger C. Field, Asst. U.S. Atty., Brooklyn, N.Y., of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendant Koch; Seth J. Cummins, Michael C. Harwood (awaiting admission), New York City, of counsel.

Koblenz & Carr, Albany, N.Y., for defendant Northeastern Conference of Seventh Day Adventists; Mark L. Koblenz, Albany, of counsel.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiffs are the United Neighbors Civic Association of Jamaica, Inc. (the "Association"), a New York not-for-profit corporation and various individual members thereof. They bring this action under the National Environmental Policy Act of 1969 ("NEPA"), § 102, 42 U.S.C. § 4332 (1976), and under the Fifth and Ninth Amendments, U.S. Const. amends. V & IX, to declare that § 102 of NEPA requires defendants to file an Environmental Impact Statement ("EIS") prior to the construction of a 111 unit senior citizen housing project at 131–10 New York Boulevard, Jamaica, Queens, New York. In addition, the complaint seeks injunctive relief.

█ Having previously denied plaintiffs' request for a temporary restraining order, the Court, on January 21, 1983, denied their request for a preliminary injunction, and reserved decision on defendants' motion to dismiss the complaint. On April 26, 1983, the Court heard further argument on the motion to dismiss, and the parties have submitted post-argument briefs or letters. For the reasons stated below, the defendants' motion to dismiss is granted.[1]

## FACTS

In late 1975, the Northeastern Conference of Seventh Day Adventists (the "owner") submitted a proposal to the Depart-

---

1. Defendant Anne M. Gorsuch, the former administrator of the Environmental Protection Agency, has moved to dismiss on the separate ground that the Complaint fails to contain any allegations against her, arguing that the Department of Housing and Urban Development is the sole federal agency which has acted with respect to the subject matter of the Complaint. Because HUD is the appropriate body to make the original determination as to environmental impact, and because the Complaint does not allege improper conduct by Ms. Gorsuch or her successor, the Complaint against the EPA is dismissed upon the separate motion of Ms. Gorsuch.

Defendant Edward Koch, the Mayor of the City of New York, also has filed a separate motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (failure to state a claim) and New York CPLR 217 (statute of limitations). The Complaint alleges that the City failed to comply with the Uniform Land Use Review Procedure set forth in Section 197–c of the New York City Charter. That law requires specific procedures to be followed before the City takes one of eleven listed actions respecting the use of land which is subject to City regulation. In this case, the City Board of Estimate granted the Northeastern Conference of Seventh Day Adventists a property tax abatement on the proposed housing project. Defendant Koch argues that: (1) the granting of property tax abatements is not among the eleven actions listed in § 197–c which would require compliance with the Uniform Land Use Review Procedure; (2) the action under § 197–c is time-barred in accordance with N.Y. CPLR 217 (four month statute of limitations on actions commenced pursuant to N.Y. CPLR Art. 78); and (3) because the City is not a federal agency, it is not required to comply with NEPA. I agree with all three of the arguments proffered by Defendant Koch, and, accordingly, his separate motion to dismiss is granted.

Defendant Northeastern Conference of Seventh Day Adventists has not filed a separate motion to dismiss but joins in the Government's motion discussed *infra*.

ment of Housing and Urban Development ("HUD") to obtain government financing of a twelve-story, 111 unit, senior citizen housing project (the "project"). On August 6, 1976, HUD made an initial reservation of funds in the amount of $3,300,000.00 and forwarded the owner's proposal to HUD's New York Regional Office for technical evaluation of the project. Such evaluation routinely includes, *inter alia,* an assessment of fiscal viability, management, architectural and engineering acceptability, as well as consideration of the proposed project's compliance with other federal laws including the National Housing Act, 12 U.S.C. § 1701 *et seq.*

As part of its technical evaluation in this case, HUD made an analysis of the project's anticipated effect on the surrounding environment. At the time of this environmental analysis, HUD's regulations established three levels of environmental review and provided specific guidelines as to when each level should be performed. These levels were as follows: (1) For multifamily projects, an Environmental Impact Statement was required for projects with 500 units or more. 39 Fed.Reg. 38,923 para. 5, amending Appendix 2 (1974). (2) For multifamily projects, Special Environmental Clearance was required for projects of 200 units or more or where the requested mortgage amount exceeded $5 million. *Id.* at para. 4. (3) For other multifamily projects, a Normal Environmental Clearance was required.

HUD distinguished among the three types of clearances (which escalated in intensity) as follows:

Normal Clearance is essentially a consistency check with HUD environmental policies and standards and a brief evaluation of environmental impact. Special Clearance requires an environmental evaluation of greater detail and depth. Finally, an Environmental Impact Statement is the complete and fully comprehensive environmental evaluation, including formal review by other Federal, State and local agencies as prescribed by Section 102(2)(C) of NEPA.

38 Fed.Reg. 19,185 (1973).

Because the project in question involved less than 200 units and because the owner did not request a mortgage in excess of $5 million, HUD performed its lowest level of scrutiny—a Normal Environmental Clearance. The results of this environmental survey were noted upon a form entitled "ECO ⅔." Under HUD procedures, specific environmental categories listed on the form are given ratings of A, B or C. An A rating indicates acceptability; a B rating indicates marginal acceptability; and a C rating is unacceptable and may be cause for rejection of the project if the particular deficiency is not correctable. Affirmation of Douglas R. Manley, at p. 5, para. 10 (January, 1983).

Examination of the ECO ⅔ form which was completed for the instant project, reveals that Items No. 21 and No. 22, involving sanitary sewer systems and storm sewer systems, were given a rating of A, indicating that the project would have no significant impact on the environment. The ECO ⅔ further indicates that a New York City Planning Commission Map served as source documentation in support of the A rating. *Id.*

After completion of technical processing, HUD issued a Conditional Commitment Approval letter, dated April 18, 1978, wherein HUD tentatively agreed to commit funds for the project in the amount of $4,651,-600.00. Affirmation of Ralph Lapadula, at p. 3, para. 4 (January, 1983). The owner next applied for a firm commitment of funds, and this resulted in further processing which was substantially completed by September of 1980. At that point, however, the contractor who had been engaged by the owner withdrew from the project for financial reasons, forcing the owner to retain a second contractor. As a result of this delay, a final commitment was not issued until June 21, 1982. The final commitment is in the amount of $7,083,500.00. *Id.*

Because of the pending litigation, however, HUD refuses to close the mortgage.

Moreover, at oral argument the project owner informed the Court that unless the closing occurs not later than May 5, 1983, HUD is authorized to rescind its commitment of funds.

Plaintiffs, however, argue that: (1) HUD abused its discretion in fixing 500 units as the cut-off point for the filing of an EIS in the construction of multifamily housing projects, and (2) the construction of the proposed project is a major federal action significantly affecting the quality of the human environment. *See* 42 U.S.C. § 4332(2)(C). In support of their second argument, plaintiffs allege that the existing sewer system is inadequate in the area surrounding the project site, and that the construction of the 111 unit housing project will exacerbate current difficulties. Plaintiffs have submitted numerous affidavits attesting to the current sewage problems faced by area residents.

## DISCUSSION

Although the Government cites no specific rule of procedure in support of its motion to dismiss, the Court will assume that the motion (in which all defendants join) is based either upon Fed.R.Civ.P. 12(b)(6) (failure to state a claim), or upon Fed.R. Civ.P. 12(c) (judgment on the pleadings). Because the Court has considered numerous affidavits and exhibits outside the pleadings, the Government's motion will be treated as one seeking summary judgment under Fed.R.Civ.P. 56. The Court, at oral argument on April 26, 1983, afforded the parties an opportunity to present additional material pertinent to the motion to dismiss. Both sides responded by submitting post-argument briefs, which the Court has also considered. *See* Fed.R.Civ.P. 12(b) & (c).

■ Rule 56 entitles a party to summary judgment if it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The opposing party, in order to prevail, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining the mo-

tion, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American B'casting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir.1967), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972).

The factual issues which are material to the determination of this motion are not in dispute: (1) The project in question will contain 111 units. (2) At the time HUD performed its environmental survey, HUD regulations provided that multifamily housing projects having less than 500 units did not require the filing of an EIS. (3) HUD performed a Normal Environmental Clearance and specifically determined that the project would not have an adverse impact on the existing sewer system in the surrounding area. (4) The Bureau of Sewers of the New York City Department of Environmental Protection has approved the construction of the project, and the New York City Department of Buildings has removed all previous limitations placed upon the owner's building permit. Affidavit of Mark L. Koblenz, Exhibits A & B (March 29, 1983). (5) Affidavits submitted by individual members of the Association (attesting to past sewer difficulties), being unchallenged by defendants, are taken to be true for purposes of this motion.

In sum, plaintiffs claim that HUD acted arbitrarily, when it (1) fixed 500 units as the cut-off point for the filing of an EIS, and (2) determined that the instant project is not a major federal action significantly affecting the quality of the human environment. These claims may be determined as a matter of law.

I note at the outset that regulations promulgated by the Council on Environmental Quality require federal agencies, such as HUD, to review and revise their policies, procedures and regulations as necessary, in order to ensure full compliance with the purposes and provisions of NEPA. 40 C.F.R. § 1500.6. Pursuant to that mandate, HUD promulgated the three-tiered environmental clearance process, challenged herein, "to determine which action is a ma-

jor Federal action significantly affecting the quality of the human environment." 38 Fed.Reg. 19,183 (1973). Thus, HUD established objective criteria to insure compliance with § 102(2)(C) of NEPA—an Act whose language has been characterized as "opaque" and "woefully ambiguous." *Hanly v. Kleindienst,* 471 F.2d 823, 825 (2d Cir.1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973) (citations omitted). The need to establish an objective threshold for the filing of EIS's was readily apparent then, as it is now. According to 1973 statistics, HUD was processing between 15,000 and 20,000 applications per year at the project level. 38 Fed.Reg. 19,-183 (1973).

 It is, of course, axiomatic that "when the agency entrusted with the execution of a Federal Statute has interpreted that Statute, it is entitled to considerable deference." *McGraw v. Berger,* 537 F.2d 719, 725 (2d Cir.1976), *citing Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Accordingly, I find that the challenged regulations were reasonably related to the policies and purposes of NEPA and not in conflict with congressional intent.[2] *See McGraw v. Berger, supra,* 537 F.2d at 726; *see also New York Department of Social Services v. Dublino,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

In *Hanly v. Mitchell,* 460 F.2d 640, 644 (2d Cir.1972), *cert. denied, sub nom. Hanly v. Kleindienst,* 409 U.S. 990, 93 S.Ct. 313, 34 L.Ed.2d 256 (1972) ("*Hanly I*"), the court held that the concept of "major Federal action" and the concept of "significant effect" are different and that "the responsible federal agency has the authority to make its own threshold determination as to each in deciding whether an impact state-

ment is necessary." Subsequently, in *Hanly v. Kleindienst,* 471 F.2d 823, 830 (2d Cir.1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973) ("*Hanly II*"), the court held that "the applicable scope of review of an agency's threshold determination that an impact statement is not required under § 102 of NEPA is the 'arbitrary, capricious, abuse of discretion' standard."

As previously noted, HUD relied primarily upon its three-level environmental clearance regulations in determining that an EIS was unnecessary in this case. *Hanly II* requires a reviewing court to evaluate that action under the "arbitrary, capricious, abuse of discretion" standard in addition to reviewing them under the "rational relationship" standard discussed in *McGraw v. Berger, supra.*

 The burden of proving that an agency's action is arbitrary and capricious rests upon the plaintiff. *Angel v. Butz,* 487 F.2d 260, 263 (10th Cir.1973), *cert. denied,* 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1974). In reviewing an agency's action under the arbitrary and capricious standard, the court must determine whether the agency's decision was based upon a consideration of the relevant factors and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* If the court determines that the agency action has a rational basis, it must affirm that action even though it disagrees with the agency's decision. *Bowman Transportation, Inc. v. Arkansas-Best*

**2.** Plaintiffs have also claimed that "[e]ven should defendants be authorized by statute to undertake and carry out such construction as planned, any and all such statutes offend the Fifth and Ninth Amendments and are void . . . ." Complaint at p. 7, para. 3. I must assume that plaintiffs do not challenge the constitutionality of § 102(2)(C) of NEPA—it is the very statute they seek to enforce. Rather, the constitutional challenge is necessarily levelled at the HUD regulations which provide for the three-tiered environmental clearance process. My finding that those regulations were reasonably related to the policies and purposes of the statute which plaintiffs seek to enforce (NEPA) disposes of plaintiffs' challenge to the constitutionality of the regulations themselves.

*Freight System, Inc.,* 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974). Moreover, if the agency interpretation is of an administrative regulation, the court must show a high level of deference to that interpretation. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1964).

In *Hanly I,* the defendant government agency claimed that the term "major Federal action" refers to "the cost of the project, the amount of planning that preceded it, and the time required to complete it, but does not refer to the impact of the project on the environment." *Hanly I, supra,* 460 F.2d at 644. As previously noted, the Court of Appeals did indeed distinguish between the concepts of "major Federal action" and "significant effect upon the environment". *Id.*

■ I find that it was not arbitrary or capricious for HUD to rely upon its own regulations in determining whether the project constituted a major Federal action. Reliance upon the objective criteria delineated in HUD's then-existing regulations was an eminently reasonable way of assessing the scope of the proposed project in terms of its predicted cost, planning requirements and estimated construction time—factors which *Hanly I* suggests may be taken into account in determining whether a major Federal action is involved.

■ To a certain extent, HUD also relied upon its existing regulations to determine the separate question of whether the project would have a significant effect upon the environment. HUD, however, did not rely exclusively upon the "500 unit" criterion specified in its regulations. Under its three-level environmental processing framework, HUD was obligated to, and did in fact, perform a Normal Environmental Clearance.

The project's sewer system is the only feature which plaintiffs claim would affect the environment adversely. Examination of the record before the Court, however, indicates that the HUD appraiser, who performed the Normal Environmental Clearance, considered the possible effect that the proposed project would have upon the area's existing sewer system. As previously noted, the appraiser considered both the sanitary sewer system and the storm sewer system, and rated them "A"—indicating acceptability. Affirmation of Douglas R. Manley, Exhibit A, at p. 2 (January, 1983).

In effect, then, HUD, by conducting a Normal Environmental Clearance Survey, made a threshold determination—separate and apart from the static "500 unit" standard—that the proposed project would not significantly affect existing sewage systems. That determination is entitled to great deference since it constitutes the type of "outright finding" required by *Hanly II. See id.* at 834.

Moreover, cases have held that HUD is entitled to rely upon conformity with local standards in making its threshold determination. In *Maryland-National Capital Park and Planning Commission v. U.S. Postal Service,* 487 F.2d 1029 (D.C.Cir.1973), the Court stated:

> When local zoning regulations and procedures are followed in site location decisions by the Federal Government, there is an assurance that such 'environmental' effects as flow from the special uses of the land—the safety of the structures, cohesiveness of neighborhoods, population density, crime control, and esthetics—will be no greater than demanded by the residents acting through their elected representatives. There is room for the contention and there may even be a presumption, that such incremental impact on the environment as is attributable to the particular land use proposed by the Federal agency is not 'significant,' that the basic environmental impact from the project derives from the land use pattern, approved by local authorities, that prevails generally for the same kind of land use by private persons.

*Id.* 1036–37. In the instant action, the Bureau of Sewers of the New York City Department of Environmental Protection and the New York City Department of Buildings have given final approval to the project. Affidavit of Mark L. Koblenz, Exhibits A & B (March 29, 1983).

For all of the aforementioned reasons, then, I find that HUD's determination that it was not required to file an EIS under § 102(2)(C) of NEPA was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Accordingly, defendants' motion to dismiss the complaint in its entirety is granted.[3]

SO ORDERED.

---

**3.** The Government has also argued that the Complaint should be dismissed under the equitable doctrine of laches. Given the record before me on this motion for summary judgment, however, I am unable to find, as a matter of law, that plaintiffs were guilty of "inexcusable delay"—a *sine qua non* for laches.